**IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA**

| | |
|---|---|
| **MICHAEL A. LAMIA,** | CIVIL DIVISION |
| Plaintiff, | |
| v. | Case No. GD-22- 7991 |
| **THE BOROUGH OF PLUM** t/d/b/a BOROUGH OF PLUM, PLUM BORO, PLUM BOROUGH; **ZONING HEARING BOARD OF PLUM BORO; KEVIN FIELDS**, ZONING OFFICER AND/OR DESIGNATED REPRESENTATIVE of PLUM BORO; **HEATHER ORAVITZ**, BUILDING CODE OFFICIAL OF PLUM BORO; and **DAVID A. SOBOSLAY**, ASSISTANT MANAGER OF PLUM BORO, in their Individual and/or Official Capacities, | Pleading type: ~~PETITION/~~COMPLAINT FOR EQUITABLE AND MONETARY RELIEF |
| | Filed on Behalf of Plaintiff: Michael A. Lamia |
| | Counsel of Record for Plaintiff: Louis J. Kroeck, IV, Esquire Pa. I.D. # 210045 |
| Defendants. | |

LJK LAW, PLLC
1200 Sarah Street
Pittsburgh, PA 15203
Phone: 1 (412) 712-7605
Email: lou@ljk-law.com

**JURY TRIAL DEMANDED**

FILED

2022 JUN 24 PM 12:50

DEPT OF COURT RECORDS
CIVIL/FAMILY DIVISION
ALLEGHENY COUNTY PA

T112628
24 June 2022
12:52:28
GD-22-007991

EXHIBIT 1

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

**MICHAEL A. LAMIA,**　　　　　　　　　　CIVIL DIVISION

　　　　Plaintiff,

　　　　v.

**THE BOROUGH OF PLUM** t/d/b/a
BOROUGH OF PLUM, PLUM BORO,
PLUM BOROUGH; **ZONING HEARING**
**BOARD OF PLUM BORO**; **KEVIN**
**FIELDS,** ZONING OFFICER AND/OR
DESIGNATED REPRESENTATIVE of
PLUM BORO; **HEATHER ORAVITZ,**
BUILDING CODE OFFICIAL OF PLUM
BORO; and **DAVID A. SOBOSLAY,**
ASSISTANT MANAGER OF PLUM
BORO, in their Individual and/or Official　　Case No. GD-22-
Capacities,

　　　　Defendants.
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## NOTICE TO DEFEND

　　　　YOU HAVE BEEN SUED IN COURT.  If you wish to defend against claims set forth in the following pages, you must take action within TWENTY (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the Court your defenses or objections to the claims set forth against you.  You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the Court without further notice for any money claimed in the complaint or for any claim or relief requested by the plaintiff.  You may lose money or property or other rights important to you.

　　　　YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE.  IF YOU DO NOT HAVE OR KNOW A LAWYER, THEN YOU SHOULD GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP:

LAWYER REFERRAL SERVICE
ALLEGHENY COUNTY LAWYER REFERRAL SERVICE
400 Koppers Building - 436 Seventh Ave.
Pittsburgh, Pennsylvania 15219
412-261-5555

**IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA**

MICHAEL A. LAMIA,                                    CIVIL DIVISION

     Plaintiff,

     v.

**THE BOROUGH OF PLUM** t/d/b/a
BOROUGH OF PLUM, PLUM BORO,
PLUM BOROUGH; **ZONING HEARING
BOARD OF PLUM BORO**; **KEVIN
FIELDS**, ZONING OFFICER AND/OR
DESIGNATED REPRESENTATIVE of
PLUM BORO; **HEATHER ORAVITZ**,
BUILDING CODE OFFICIAL OF PLUM
BORO; and **DAVID A. SOBOSLAY**,
ASSISTANT MANAGER OF PLUM
BORO, in their Individual and/or Official          Case No. GD-22-
Capacities,

     Defendants.
*********************************************************************

**~~PETITION~~/COMPLAINT FOR EQUITABLE AND MONETARY RELIEF**

     **AND NOW COMES**, Plaintiff, Michael A. Lamia, by and through his attorneys,

Louis J. Kroeck, IV, Esquire and LJK LAW, PLLC and sets forth in the following Petition for

Equitable and Monetary Relief:

### PARTIES

     1.    Plaintiff, Michael A. Lamia, is an adult individual residing in Westmoreland

County, Pennsylvania.

     2.    Defendant, The Borough of Plum t/d/b/a Borough of Plum, Plum Borough and

Plum Boro (hereafter "Plum Boro" or "Defendant"), is a Borough in Allegheny County,

Pennsylvania and a suburb of Pittsburgh, Pennsylvania with a place of business located at

4575 New Texas Road, Pittsburgh, Allegheny County, Pennsylvania 15239.

4

3.      Defendant, Zoning Hearing Board of Plum Boro (hereafter "Board" or "Defendant"), is a "quasi judicial body" that address requests from property owners who either propose construction or land improvements which cannot conform to the established zoning regulations and/or in the alternate address appeals from Zoning Officers/Designated Representatives for Plum Boro.  The decisions rendered by the Board are binding and must be appealed to the Court of Common Pleas of Allegheny County, with their place of business being regularly conducted at 4575 New Texas Road, Pittsburgh, Allegheny County, Pennsylvania 15239.

4.      Defendant, Kevin Fields, Zoning Officer and/or Designated Representative (hereafter "Mr. Fields" or "Defendant") for the Board and/or of Plum Boro is appointed by Plum Borough Council pursuant to their qualifications whose duties and powers include administering the Zoning Ordinance of Plum Boro, specifically, Plum Boro Zoning Ordinance 916-17 adopted December 11, 2017 and amended by Ordinance 932-18 on December 17, 2018 (See attached Exhibit "1", which is made part hereof and incorporated herein by reference as though it was fully set forth at length);  with his place of business being regularly conducted at 4575 New Texas Road, Pittsburgh, Allegheny County, Pennsylvania 15239.

5.      Defendant, Heather Oravitz, Building Code Official of Plum Boro (hereafter "Ms. Oravitz" or "Defendant") deals with building and code enforcement, residential and building inspections, permits, and construction issues, as well as, issues permits for decks, fences, swimming pools and other common residential and commercial structures with her place of business being regularly conducted at 4575 New Texas Road, Pittsburgh, Allegheny County, Pennsylvania 15239.

5

6.    Defendant, David A. Soboslay, Assistant Manager of Plum Boro (hereafter "Mr. Soboslay" or "Defendant"), whose position was implemented by way of a "Council-Manager" form of government, and Council appoints a manager as the Chief Administrative Officer of Plum Boro and authorizes the manager to administer the Plum Boro departments within the policy parameters established by Council and serves at their pleasure. The manager is directly responsible for supervising the day-to-day operations of all Plum Boro Departments, preparation and management of the annual budget, establishing the Council agendas, maintaining Boro records, and long-range planning efforts, with a place of business being regularly conducted at 4575 New Texas Road, Pittsburgh, Allegheny County, Pennsylvania 15239.

7.    The residential property complained of herein is located in Plum Boro at Lot and Block Number: 851-L-25, with an address of 103 McJunkin Road, Pittsburgh, Allegheny County, Pennsylvania 15239.

8.    All Defendants named herein are being sued jointly and/or severely in their individual and/or official capacities.

9.    Defendant's are subject to liability by their concerted efforts pursuant to a common design to impede and inhibit occupancy or violate Mr. Lamia's constitutional rights to quiet use and enjoyment of his residence or property at 103 McJunkin in violation of Pennsylvania's Act 133 of 2016.

10.    Defendant's had actual knowledge that their willful, wanton, intentional or deliberate conduct constituted a breach of their official duty owed to Mr. Lamia and gave substantial assistance or encouragement to the other as to impede or inhibit Mr. Lamia's

constitutional rights and quiet use or enjoyment of his residence or property at 103 McJunkin.

## JURISDICTION AND VENUE

11.     The previous paragraphs are incorporated herein by reference as though they were fully set-forth at length.

12.     This Honorable Court has jurisdiction to entertain this Petition/Complaint for Equitable and Monetary Relief, insomuch as, the actions, in-actions, errors, omissions and commissions occurred in Plum Boro, Allegheny County, Pennsylvania.

13.     Venue is proper as the occupancy permit on the residence or property complained of herein is situated in Allegheny County, Pennsylvania, in Plum Boro.

14.     Jurisdiction of this Honorable Court is invoked pursuant to the Pennsylvania Rules of Civil Procedure 1092 (c)(2) and Capinski v. Upper Pottsgrove Twp., 164 A.3d 601, 602 (Pa.Cmwlth. 2017)(holding that in the absence of a statutory remedy, Pennsylvania Law, allows for the use of common law remedies when there is a right, there is a remedy.)

15.     A writ of mandamus compels the government's performance of a ministerial and mandatory duty where there is a clear legal right in the plaintiff and a lack of any other adequate and appropriate remedy at law.   Capinski, at 602.

16.     The governmental duty to act usually derives from a statute or ordinance Capinski, at 602 and in this instant matter the proper ordinance is Plum Boro Zoning Ordinance 916-17 as amended 932-18.

17.     Plaintiff, Michael A. Lamia, seeks both equitable and monetary relief in this action.

7

## FACTS

18. The previous paragraphs are incorporated herein by reference as though they were fully set-forth at length.

19. On or about 2016, Plaintiff Michael A. Lamia (hereafter "Mr. Lamia") applied to Defendants for a permit to build a carport at 103 McJunkin Road, Pittsburgh, Allegheny County, Pennsylvania 15239 at Lot and Block: 851-L-25 (hereafter "103 McJunkin").

20. Defendant's approved the permit for Mr. Lamia's carport.

21. A year later in 2017, Mr. Lamia, applied to Defendant's for a permit to build a garage at 103 McJunkin.

22. Defendant's, thereafter, arrived at 103 McJunkin for a visual inspection of the property for the garage permit or a warrantless entry upon Mr. Lamia's property or land in violation of the 4th Amendment to the United States Constitution and Article I, §8 of the Pennsylvania Constitution.

23. During the visual inspection Defendant's noticed a few piles of dirt left over from the installation of the carport and advised Mr. Lamia he needed to hire a soil engineer and a grading permit.

24. Mr. Lamia removed the piles of dirt from the property.

25. The property of 103 McJunkin was under contract for sale on July 21, 2021 and ended on September 21, 2021 due to the conduct of the Defendants.

26. On July 21, 2021, Mr. Lamia's real estate agent filed for an occupancy inspection from Defendant's in an effort to sell the 103 McJunkin property as a residence to a prospective buyer in the amount of two-hundred, seven-thousand dollars and no cents ($207,000.00).

8

27.     Defendant Mr. Fields propounded a field corrective notice or list for occupancy and Mr. Lamia complied with the field corrective notice of list immediately.

28.     Defendant Mr. Fields never returned to the property to review the field corrective notice and Mr. Lamia's compliance based upon the direction of Defendant Mr. Soboslay and Defendant Ms. Oravitz. direction not to do so.

29.     Defendant's, refused to issue an occupancy permit based on the fact Mr. Lamia had current code violations at the property for failure to hire a grading expert or to remove the dirt piles and illegal dumping.

30.     Mr. Lamia advised Defendant's the dirt piles have since been removed, no garage was being erected thereon said property, there was no "illegal dumping" on the property and that Mr. Lamia was attempting to sell the property as a residence; however, that Defendant's, were throwing around the term "illegal dumping" loosely to the buyer causing the buyer to back out of the sale of the property because of the associated financial institution's obligation not to issue funds until occupancy is permitted.

31.     Mr. Lamia has never been cited by Defendant's for the dirt piles, illegal dumping or failure to hire any grading expert and provided fair process to challenge these official actions.

32.     In addition, the statute of limitations has since expired for any alleged violations of a grading ordinance and/or illegal dumping ordinance from the time of the allegedly committed by Mr. Lamia.

33.     In any event, Defendant's willfully, wantonly, intentionally and deliberately refused to issue this occupancy permit (whether a permanent permit or temporary permit) to Mr. Lamia for alleged dirt piles, illegal dumping and other such code violations but Mr.

9

Lamia was never cited with these alleged violations because the same were previously rectified and the statute of limitations has since expired.

34.     Defendant's named herein are engaging in a constructive possession or holding hostage and utilizing the denial of occupancy at 103 McJunkin as leverage or a punishment to compel Mr. Lamia to comply with various laws, statutes or ordinances Defendant's assert were allegedly violated, which is a violation of due process and equal protection of the law.

35.     Furthermore, Defendant's willfully, wantonly, intentionally and deliberately refused to either grant or deny Mr. Lamia's occupancy permit application under the auspice of these alleged errors or code violations barring the rental or sale of the property or Mr. Lamia's right of appeal, which in fact is a denial of due process and equal protection of the law rising to the level of a constructive and/or regulatory taking in violation of the 5th, 8th and 14th Amendments to the United States Constitution and Article I, §§1, 10 and 13 of the Pennsylvania Constitution.

36.     Additionally, Mr. Lamia, has been denied his right of petition and/or fair process regarding this matter, insomuch as, Mr. Lamia has not been provided any avenue to challenge Defendant's wrongdoing in this matter and Defendant's continue to willfully, wantonly, intentional and deliberately thwart his claims raised herein, which is also a violation of 1st, 4th, 5th, 6th and 14th Amendments to the United States Constitution, as well as, Article I, §§1, 6, 8, 9, 10, 11, 20 & 26 in addition to Article V, §9.

37.     Because of Defendant's wrongdoing in this matter, it impaired or impeded a contract of a rental unit or property sale without just compensation in violation 5th and 14th

Amendments to the United States Constitution and Article I, §§1, 10 & 17 Pennsylvania Constitution.

38.     As a result, on or about September 21, 2021, the sale of 103 McJunkin fell through when the market was hot and interest rates were low, because of the action, inaction, error, omission and commission of Defendant's in failing to issue any occupancy permit, whether permanent or temporary, in violation of Plum Boro Ordinance 916-17 as amended by 932-18 at Section 1109-1110 and for refusing to deny the occupancy permit so that Mr. Lamia may take any appeal to the Board.

39.     Mr. Lamia received correspondence from Three Rivers Lending, which in pertinent part stated as follows: "A bank/lender will not close on a purchase transaction until we have an occupancy permit from the borough." See attached Exhibit "2", which is made part hereof and incorporated herein by reference as though it was fully set forth at length.

40.     The property at issue is not unfit for habitation or structurally unsound and Defendants have not provided a reasonable basis in this alleged process or in this regulatory or constructive taking by willful, wanton, intentional or deliberate non-issuance of occupancy for Mr. Lamia to assert otherwise.

41.     Pursuant to Defendants it was alleged that Mr. Lamia was illegally dumping on the property at issue, which predate his purchase of the property.

42.     At all times relative hereto, Mr. Lamia has not engaged in any illegal dumping on the property and furthermore would not hinder the issuance of an occupancy, in that, the structure is not unfit for habitation.

11

43.     Mr. Lamia has sought the issuance of the occupancy; however, the same has not been approved or denied, which triggers and violates Mr. Lamia's constitutional rights to quiet enjoyment and use of his property.

44.     As a result of the actions of Defendant's, Mr. Lamia has lost a sale of the property and had to retain legal counsel.

45.     As a result of the actions of Defendant's, Mr. Lamia is incurring additional and estimated expenses and losses in unwanted bills or taxes for the property and residence, as well as, rents in excess of twelve-thousand dollars and no cents ($12,000.00).

46.     On or about February 17, 2022, Mr. Lamia, attempted again to rectify the issuance of the occupancy for the renting/sale of the residence/property at 103 McJunkin.

47.     On or about February 18, 2022, Mr. Fields (Zoning Officer and/or Designated Representative) of Plum Boro issued a corrective notice of alleged deficiencies of the property at issue, most of which, were completed prior to the attempted sale in September of 2021.  See attached Exhibit "3", which is made part hereof and incorporated herein by reference as though it was fully set forth at length.

48.     On March 23, 2022, Mr. Fields, arrived at the residence and/or property of 103 McJunkin for inspection, during which time, Mr. Fields stated that an occupancy permit would issue.

49.     Shortly thereafter, Mr. Fields, arrived back at Plum Boro, spoke to Mr. Soboslay and/or Ms. Oravitz, and, denied occupancy without just cause or justification for doing so leaving Mr. Lamia in lurch with no process to challenge the decision.

50.     Mr. Lamia, thereafter, received an additional Field Corrective Notice by Mr. Fields dated March 23, 2022 denying the occupancy permit based on "illegal dumping,

12

failure to obtain a grading permit and remove fill from the property" to that of which predate his purchase of the property at issue upon the urging of Mr. Soboslay and/or Ms. Oravitz. See attached Exhibit "4", which is made part hereof and incorporated herein by reference as though it was fully set forth at length.

51.    At no time relative hereto, did Defendant's initiate any enforcement procedures or provide Mr. Lamia a mechanism to appeal this decision pursuant to Plum Boro Ordinance 916-17 as amended by 932-18 at Section 1113 through 1115.

52.    At this time, Mr. Lamia, pursuant to Plum Boro Zoning Ordinance 916-17 as amended by 932-18 at Section 113 (D)(5) had taken an appeal to the Board from the denial of occupancy, which was scheduled for a hearing on May 18, 2022. See attached Exhibit "5", which is made part hereof and incorporated herein by reference as though it was fully set forth at length.

53.    After the Board appeal hearing, the Board issued its Findings of Fact, Conclusions of Law and Decision authored by Michelle Chapkis, Chairperson, which dismissed said appeal for lack of jurisdiction under the auspice that Ordinance 321 is not a Zoning Ordinance and Mr. Fields is not a Zoning Officer, which is clearly an erroneous interpretation of the local ordinance. See attached Exhibit "6", which is made part hereof and incorporated herein by reference as though it was fully set forth at length.

54.    The Board willfully, wantonly, intentionally and deliberately committed an error of law, abused its discretion, violated Mr. Lamia's constitutional rights and such findings are not supported by the evidence.

55.    The Board had the authority to issue an occupancy permit but refused to do so.

13

56.     Specifically, Mr. Lamia was filing an appeal to the Board from the denial of occupancy (Zoning Ordinance) by Defendant Mr. Fields (a Zoning Officer and/or Designated Representative) and the Board's bootstrapping of this matter as a challenge to a non-related Zoning Ordinance speaks volumes in and of itself. See attached Exhibit "7" page 1, checked paragraphs A. and E., which is made part hereof and incorporated herein by reference as though it was fully set forth at length.

57.     Specifically, the Board had a duty under its existing laws or Zoning Ordinances, to address this matter on appeal and, also, to order the relief requested by Mr. Lamia i.e., the issuance of occupancy at 103 McJunkin.

58.     Prior to this appeal being taken to the Board pursuant to Plum Boro Zoning Ordinances, Mr. Lamia, was required to expend significant sums on money on legal expenses and his requirement to hire an attorney, suffering additional losses, from a willful, wanton, intentional and deliberate constructive or regulatory taking of his residence and property at 103 McJunkin without just compensation.

59.     Counsel for Mr. Lamia has reached out to the Solicitor of the Zoning Board and the Solicitor of Plum in efforts to *amicably* resolve this matter or for an approval or denial of the occupancy permit; however, no permit has issued.

60.     At all times relative hereto, Mr. Lamia and counsel, have reached out to several personnel of Plum Boro several times in efforts to *amicably* resolve this matter and nothing has been done by Defendants in this regard concomitant with Defendant's blatant refusals to act, which rises to the level of a constructive and/or regulatory taking without just compensation.

61.     Mr. Lamia has a clear legal right to his quiet enjoyment and use of his residence and property without legitimate state interference or impediment.

62.     Defendant's have a mandatory duty under all federal and state laws or constitutions to issue occupancy.

63.     Mr. Lamia has no other adequate remedy at law and a clear legal right or entitlement to the relief requested.

## COUNT I-COMMON LAW WRIT OF *MANDAMUS*

64.     The previous paragraphs are incorporated herein by reference as though they were fully set-forth at length.

65.     A municipality cannot refuse to issue an occupancy permit based on code violations "unless the substantial violation renders the property unfit for habitation." See Section 3(d) of the Municipal Code and Ordinance Compliance Act, 68 Pa.C.S.A. § 1083(d).

66.     The alleged violations asserted against Mr. Lamia by Defendant's named herein do not make the property unfit for habitation or structurally unsound.

67.     Here, Mr. Lamia has not been cited with any violations and has complied with all the requirements of the property for issuance of the occupancy.

68.     Defendant's willfully, wantonly, intentionally and deliberately refuses to approve or deny the occupancy, which in effect denies Mr. Lamia his quiet use and enjoyment of his residence/property at 103 McJunkin, due process and equal protection, his day in court, right to appeal and rises to the level of a constructive and/or regulatory taking in without just compensation in violation of his rights under both the United States and Pennsylvania Constitutions.

15

69.     As a result of the conduct of each Defendant, Mr. Lamia, has lost significant sums of money in estimated rents and/or the sale of 103 McJunkin coupled with his continued payments to upkeep the property in addition to taxes, as well as, attorneys fees and court costs.

70.     Mr. Lamia has no other adequate remedy at law and a clear entitlement to the relief requested.

71.     Defendant's have a mandatory duty to issue the occupancy permit for the residence or property at 103 McJunkin.

72.     The writ of mandamus exists to compel official performance of a ministerial act or mandatory duty.  Delaware River Port Authority v. Thornburgh, 493 A.2d 1351, 1355 (Pa. 1985).

73.     Mandamus cannot issue "to compel performance of a discretionary act or to govern the manner of performing [the] required act." Volunteer Firemen's Relief Association of the City of Reading v. Minehart, 203 A.2d 476, 479 (Pa. 1964).

74.     A [c]ourt may issue a writ of mandamus where [there exists] a clear legal right, the responding public official has a corresponding duty, and no other adequate and appropriate remedy at law exists.  Board of Revision of Taxes City of Philadelphia v. City of Philadelphia, 4 A.3d 610, 627 (Pa. 2010).

75.     Moreover, mandamus is proper to compel the performance of official duties whose scope is defined as a result of the mandamus action litigation. Thornburgh, at 1355.

76.     A mandamus will lie to compel action by an official where his refusal to act in the requested way stems from his erroneous interpretation of the law [or ordinances]." Minehart, at 479-80.  See also Fagan v. Smith, 41 A.3d 816, 818 (Pa. 2012) (per curiam).

16

**WHEREFORE,** Plaintiff, Michael A. Lamia, demands judgment is entered against the Defendant's The Borough of Plum; Zoning Hearing Board of the Borough of Plum; Kevin Fields, Zoning Officer and/or Designated Representative of the Borough of Plum; Heather Oravitz, Building Code Official of Plum Boro; and, David A. Soboslay, Assistant Manager, the Borough of Plum.  Grant such other equitable and monetary relief as outlined below and what this Honorable Court deems just and proper under the circumstances.

### COUNT II-VIOLATION OF THE MUNICIPAL CODE AND ORDINANCE COMPLIANCE ACT 133 OF 2016

77.     The previous paragraphs are incorporated herein by reference as though they were fully set-forth at length.

78.     Defendant's conduct in its willful, wanton, deliberate and intentional failure to issue occupancy is a violation of the Municipal Code and Ordinance Compliance Act 133 of 2016, in that, the alleged code violations are *de minimus* in nature and do not rise to the level of "unfit for habitation".

79.     The term "unfit for habitation" is more clearly defined to describe homes that are "dangerous or injurious to the health, safety or physical welfare of an occupant or the occupants of neighboring dwelling."

80.     Defendant's can no longer deny occupancy due to minor issues.

**WHEREFORE,** Plaintiff, Michael A. Lamia, demands judgment is entered against the Defendant's The Borough of Plum; Zoning Hearing Board of the Borough of Plum; Kevin Fields, Zoning Officer and/or Designated Representative of the Borough of Plum; Heather Oravitz, Building Code Official of Plum Boro; and, David A. Soboslay, Assistant Manager, the Borough of Plum.  Grant such other equitable and monetary relief as outlined below and what this Honorable Court deems just and proper under the circumstances.

17

## COUNT III-CONSTITUTIONAL VIOLATIONS AND CONSTRUCTIVE OR REGULATORY TAKING WITHOUT JUST COMPENSATION

81.     The previous paragraphs are incorporated herein by reference as though they were fully set-forth at length.

82.     At all times relative hereto, Defendants are stripped of their cloak of immunity from lawsuit under 42 Pa.C.S.A. § 8550.

83.     Willful misconduct in any action against a local agency or employee thereof for damages on account of an injury caused by the act of the employee in which it is judicially determined that the act of the employee caused the injury and that such act constituted a crime, actual fraud, actual malice or willful misconduct, the provisions of sections 8545 (relating to official liability generally), 8546 (relating to defense of official immunity), 8548 (relating to indemnity) and 8549 (relating to limitation on damages) shall not apply.

84.     Additionally, at all times relative hereto, Defendant's, including others not herein mentioned, violated Section 876 of the Restatement (Second) of Torts, which provides for harm resulting to Mr. Lamia because concerted unlawful conduct.

85.     Defendant's failed or refused to provide Mr. Lamia occupancy for the residence or property at issue resulting in a multitude of estimated losses, at any time, nor have they provided Mr. Lamia with due process, equal protection or the fair administration of justice to challenge this governmental intrusion without just compensation, regarding Mr. Lamia's, quiet use and enjoyment of his residence or property, as in i.e., a trial or appeal.

86.     Defendant's entered Mr. Lamia's residence or property for improper purpose, without consent, for a visual inspection, without a valid warrant to deny such occupancy, which served no valid purpose or justification.

18

87. Defendant's impaired Mr. Lamia's obligation of contracts in the renting or sale of 103 McJunkin.

88. Defendant's willfully, wantonly, intentionally and deliberately violated and continue to violate Mr. Lamia's constitutional rights to his quite use and enjoyment of his residence and property, in addition to, due process, equal protection and the fair administration of justice under the Pennsylvania and United States Constitutions, specifically, the 1st, 4th, 5th, 6th, 8th and 14th Amendments and Article I, §§1, 6, 8, 9, 10, 11, 13, 17, 20 and 26, as well as, Article V, §9.

89. As a result of the conduct of Defendant's, Mr. Lamia has been injured and damaged, in that, he has lost estimated rental fees or the sale at 103 McJunkin because of a refusal to issue an occupancy based on alleged and resolved code violations he was never charged, tried, convicted nor sentenced.

**WHEREFORE,** Plaintiff, Michael A. Lamia, demands judgment is entered against the Defendant's The Borough of Plum; Zoning Hearing Board of the Borough of Plum; Kevin Fields, Zoning Officer and/or Designated Representative of the Borough of Plum; Heather Oravitz, Building Code Official of Plum Boro; and, David A. Soboslay, Assistant Manager, the Borough of Plum.  Grant such other equitable and monetary relief as outlined below and what this Honorable Court deems just and proper under the circumstances.

<u>**COUNT IV-ABUSE OF PROCESS**</u>

90. The previous paragraphs are incorporated herein by reference as though they were fully set-forth at length.

19

91.     Defendant's asserted code violations defined as a legal process against Mr. Lamia, which prevented the issuance (or denial) of occupancy on application by him for 103 McJunkin.

92.     Mr. Lamia was never cited for any code violations at 103 McJunkin and Defendants are utilizing such process in lieu of citations, insomuch as, the statute of limitations has expired to do so, which results in occupancy being held hostage without providing Mr. Lamia.

93.     Defendant's are using an improper legal process for improper purposes i.e., to restrict him from the quiet use and enjoyment of his residence or property under a false pretense or as reason for failure to approve (or deny) occupancy, which Mr. Lamia was never tried, convicted, sentenced or provided any right of appeal.

94.     Defendant's are imputing code violations of improper legal process for improper purposes solely on the basis of their failure or refusal to issue occupancy at 103 McJunkin.

95.     Defendant's conduct in this regard is a perversion or a cause not authorized by the constitutions or laws of the United States and Commonwealth of Pennsylvania, or aimed at an objective not legitimate in the use of the constitutions or laws.

96.     Mr. Lamia has never been cited by Defendant's for the dirt piles, illegal dumping or failure to hire any grading expert and provided fair process to challenge these official actions.

97.     In addition, the statute of limitations has since expired for any alleged violations of a grading ordinance and/or illegal dumping ordinance from the time of the allegedly committed by Mr. Lamia.

98.     In any event, Defendant's willfully, wantonly, intentionally and deliberately refused to issue this occupancy permit (whether a permanent permit or temporary permit) to Mr. Lamia for alleged dirt piles, illegal dumping and other such code violations but Mr. Lamia was never cited with these alleged violations because the same were previously rectified and the statute of limitations has since expired.

99.     Defendant's named herein are utilizing the denial of occupancy at 103 McJunkin as leverage or a punishment to compel Mr. Lamia to comply with various laws, statutes or ordinances Defendant's assert were allegedly violated, which is a violation of due process and equal protection of the law.

100.    Defendant's instituted these claims, proceedings or alleged code violations against Mr. Lamia without probable cause and with malice, because the residence or property at 103 McJunkin is not unfit for habitation and is structurally sound.

101.    As a result of the conduct of the Defendant's, Mr. Lamia lost estimated rental fees and/or the sale of 103 McJunkin, is required to expend large sums of money on legal expenses to pursue this matter through litigation, when the issue presented could have been resolved amicably with Defendant's.

102.    The issues complained of by the Defendants are minor issues, which occupancy may not be denied by Defendants, pursuant to Municipal Code and Ordinance Act 133 of 2016.

103.    Defendant's conduct is unlawful and Mr. Lamia has suffered injuries and damages as result thereof.

**WHEREFORE,** Plaintiff, Michael A. Lamia, demands judgment is entered against the Defendant's The Borough of Plum; Zoning Hearing Board of the Borough of Plum;

Kevin Fields, Zoning Officer and/or Designated Representative of the Borough of Plum;

Heather Oravitz, Building Code Official of Plum Boro; and, David A. Soboslay, Assistant

Manager, the Borough of Plum.  Grant such other equitable and monetary relief as outlined

below and what this Honorable Court deems just and proper under the circumstances.

## RELIEF REQUESTED

104.    The previous paragraphs are incorporated herein by reference as though they

were fully set-forth at length.

105.    Mr. Lamia requests this Honorable Court to declare that the actions, inaction,

errors, omissions and commissions of Defendant's in this matter relating to 103 McJunkin

and Mr. Lamia, are unconstitutional on their face or violated his constitutional rights under

the United States and Pennsylvania Constitutions.

106.    Mr. Lamia requests this Honorable Court to declare that the actions, inaction,

errors, omissions and commissions of Defendant's in this matter relating to 103 McJunkin

and Mr. Lamia violated local laws.

107.    Mr. Lamia requests this Honorable Court enjoin and order Defendant's from

asserting or filing any code violations in this matter with respect to 103 McJunkin.

108.    Mr. Lamia requests this Honorable Court to enjoin Defendant's from violating

his constitutional rights under both the United States and Pennsylvania Constitutions.

109.    Mr. Lamia requests this Honorable Court to enjoin Defendant's from violating

local laws.

110.    Mr. Lamia requests this Honorable Court to order Defendant's to issue an

occupancy permit for 103 McJunkin.

111.    Mr. Lamia requests this Honorable Court to award nominal, incidental, actual, compensatory, special or other such damages not herein mentioned or recoverable by law.

112.    Mr. Lamia requests this Honorable Court to issue mandamus relief directed to Defendant's, insomuch as, Mr. Lamia has not other adequate remedy at law and a clear legal right to the relief requested.

113.    Mr. Lamia requests this Honorable Court to award him interest, costs and reasonable attorney's fees.

114.    Mr. Lamia requests a trial by jury on all issues triable by jury.

Respectfully submitted,

LJK LAW, PLLC

BY:

ATTORNEY FOR PLAINTIFF



# PLUM BOROUGH ZONING ORDINANCE
# ORDINANCE NO. 916-17

FINAL VERSION
ADOPTED: 12/11/2017

AMENDED BY ORD. 932-18
ON 12/17/2018

(This page is intentionally blank)

# TABLE OF CONTENTS

**Article I: General Provisions** ................................................................................ 1

    Section 101: Title.......................................................................................... 1

    Section 102: Statutory Authority ................................................................. 1

    Section 103: Interpretation .......................................................................... 1

    Section 104: Purpose and Findings ............................................................ 1

    Section 105: Community Development Objectives ...................................... 2

    Section 106: General Compliance .............................................................. 4

    Section 107: Applicability of Regulations to the Borough .......................... 5

**Article II: Definitions** ......................................................................................... 7

    Section 201: Word Usage............................................................................ 7

    Section 202: General Definitions ................................................................ 7

**Article III: District Regulations** .........................................................................57

    Section 301: Establishment of Districts ......................................................57

    Section 302: Base Zoning Districts .............................................................57

    Section 303: New Zoning Districts ..............................................................57

    Section 304: Official Zoning Map ................................................................58

    Section 305: Zoning District Boundaries ....................................................58

    Section 306: Zoning District Allowable Uses..............................................58

    Section 307: Bulk and Area Regulations for Uses .....................................60

    Section 308: RR – Rural Residential District...............................................60

    Section 309: SR – Single Family Residential District .................................61

    Section 310: MR – Multifamily Residential District ....................................61

    Section 311: NC – Neighborhood Mixed Use Commercial District ...........62

    Section 312: GC – General Commercial District........................................63

    Section 313: HC – Highway Commercial District .......................................64

    Section 314: LI – Light Industrial District....................................................65

    Section 315: HI – Heavy Industrial District.................................................66

    Section 316: S – Conservation District ......................................................66

    Section 317: M – Municipal District............................................................67

    Section 318: Table of Authorized Principal Uses .......................................68

    Section 319: Accessory Uses and Structures ............................................74

    Section 320: Table of Authorized Accessory Uses and Structures ...........74

i

Section 321: General Standards for all Accessory Uses and Structures ...............................76

Section 322: Specific Standards for Accessory Uses and Structures.................................77

**Article IV: Express Standards and Criteria for Special Exceptions and Conditional Uses87**

Section 401: Conditional Uses...............................................................................................87

Section 402: Conditional Use Procedure for Approval ..........................................................87

Section 403: Special Exceptions ...........................................................................................89

Section 404: Special Exception Procedure for Approval .......................................................90

Section 405: General Standards for all Conditional Uses and Special Exceptions...............91

Section 406: Accessory Dwelling Unit ..................................................................................92

Section 407: Adaptive Reuse ...............................................................................................92

Section 408: After Hours Club ..............................................................................................93

Section 409: Amusement Arcade ..........................................................................................93

Section 410: Amusement Park ..............................................................................................93

Section 411: Asphalt/Concrete Plant ....................................................................................94

Section 412: Automobile Repair and Service.........................................................................94

Section 413: Bed and Breakfast ...........................................................................................95

Section 414: Boarding House ................................................................................................95

Section 415: Bus or Truck Maintenance Facility ...................................................................95

Section 416: Care Facilities and Senior Housing ..................................................................95

Section 417: Campground .....................................................................................................96

Section 418: Cemetery and Mausoleums ..............................................................................96

Section 419: Commercial Motor Vehicle Repair.....................................................................97

Section 420: Commercial Recreation – Outdoor....................................................................97

Section 421: Community Center .............................................................................................97

Section 422: Construction-related Business ..........................................................................97

Section 423: Convenience Store ...........................................................................................98

Section 424: Correctional Facility ..........................................................................................98

Section 425: Day Care, Adult ................................................................................................98

Section 426: Day Care, Child ................................................................................................98

Section 427: Day Care, Home Based ....................................................................................99

Section 428: Drive-through Facilities ..................................................................................100

Section 429: Dwelling Types ...............................................................................................100

Section 430: Gas/Fuel Station ............................................................................................101

Section 431: Greenhouses/Nurseries .................................................................................102

Section 432: Home Occupational Business ...................................................................102

Section 433: Heavy Equipment Repair .......................................................................102

Section 434: Injection Well ..........................................................................................102

Section 435: Kennel .....................................................................................................113

Section 436: Landscape Business ...............................................................................113

Section 437: Live-Work Units ......................................................................................113

Section 438: Medical Marijuana Dispensary ...............................................................113

Section 439: Medical Marijuana Grower/Processor .....................................................114

Section 440: Methadone Treatment Facility.................................................................114

Section 441: Micro-brewery .........................................................................................115

Section 442: Micro-distillery.........................................................................................115

Section 443: Mineral Development ...............................................................................115

Section 444: Mixed-Use ..............................................................................................116

Section 445: Mobile Home Park ..................................................................................116

Section 446: Night Club ...............................................................................................116

Section 447: Oil or Gas Compressor Station ...............................................................117

Section 448: Oil or Gas Processing Plant ...................................................................120

Section 449: Oil or Gas Well/Pad ................................................................................124

Section 450: Power Generation Facility, Electric .........................................................135

Section 451: Repossession Business ..........................................................................136

Section 452: Recycling Business .................................................................................136

Section 453: Research and Development.....................................................................137

Section 454: Roadside Stand, Principal .......................................................................137

Section 455: Salt Storage Facility ...............................................................................137

Section 456: Salvage/Junk Yard..................................................................................137

Section 457: Self-storage Facility ................................................................................138

Section 458: Sexually Oriented Businesses ................................................................138

Section 459: Shopping Center......................................................................................140

Section 460: Short-term Rental (Accessory or Principal) .............................................141

Section 461: Skilled Nursing Facility ...........................................................................141

Section 462: Solar Energy Production Facilities, Large ...............................................142

Section 463: Solid Waste Facilities (Transfer Stations; Incinerators; Landfills) ..................143

Section 464: Storage Yard ...........................................................................................144

Section 465: Supply Yard .............................................................................................145

Section 466: Tank Farms ...................................................................................146

Section 467: Tavern or Bar................................................................................146

Section 468: Towing or Other Road Services ....................................................147

Section 469: Urban Agriculture, Principal .........................................................147

Section 470: Vehicle Sales; Vehicle Rental Facility ..........................................147

Section 471: Wind Energy Production Facility, Large ........................................148

Section 472: Uses Not Listed ............................................................................149

**Article V: Supplemental Regulations..............................................................151**

Section 501: Performance Standards ................................................................151

Section 502: Screening and Bufferyards............................................................152

Section 503: Nonresidential Use Lighting Standards .........................................154

Section 504: Residential Use Lighting Standards ..............................................154

Section 505: Flood Plains .................................................................................155

Section 506: Outdoor Storage ..........................................................................155

Section 507: Utilities.........................................................................................155

Section 508: Exterior Finishes ..........................................................................155

Section 509: Screening of Roof Equipment ......................................................155

Section 510: Temporary Uses ...........................................................................155

Section 511: Incentive-based Architectural Standards.......................................157

Section 512: Attached Residential Garages ......................................................158

**Article VI: Parking.............................................................................................161**

Section 601: Parking ........................................................................................161

Section 602: Parking Dimensions......................................................................161

Section 603: Parking Lot Layout and Design Standards ....................................162

Section 604: Accessible Parking Requirements.................................................163

Section 605: Single Family Parking Requirements ............................................163

Section 606: Parking Ratios ..............................................................................163

Section 607: Off-street Loading and Unloading .................................................170

**Article VII: Signs ...............................................................................................173**

Section 701: Purpose .......................................................................................173

Section 702: Applicability..................................................................................173

Section 703: Types of Signs .............................................................................174

Section 704: Prohibited and Exempt Signs........................................................174

Section 705: Determining Sign Area and Height................................................175

Section 706: Permitted Signs in Residential Districts..................................175

Section 707: Permitted Signs in all Nonresidential Districts .....................177

Section 708: General Regulations ..........................................................181

Section 709: Billboards ...........................................................................182

Section 710: Murals.................................................................................184

**Article VIII: Wireless Communications Facilities** ....................................**185**

Section 801: Purpose and Findings of Fact ............................................185

Section 802: General Standards for All Tower-Based WCFs....................185

Section 803: Specific Requirements for Tower-Based WCFs Outside of the ROW...........189

Section 804: Specific Requirements for Tower-Based WCFs in the Public ROW ..............192

Section 805: General Standards for All Non-Tower WCF .........................194

Section 806: Specific Requirements for Non-Tower WCF Outside the ROW....................196

Section 807: Specific Requirements for Non-Tower WCF in the Public ROW....................198

**Article IX: Planned Residential Development** ...........................................**201**

Section 901: Purpose ..............................................................................201

Section 902: Procedure for Approval .......................................................201

Section 903: General Provisions .............................................................206

Section 904: Permitted Uses ...................................................................206

Section 905: Site Design Requirements ...................................................207

Section 906: Required Elements ..............................................................208

Section 907: Additional Design Standards................................................209

Section 908: Common Open Space Standards of Ownership and Maintenance.................210

**Article X: Nonconforming Uses, Structures, and Lots** ...........................**213**

Section 1001: Purpose .............................................................................213

Section 1002: Nonconforming Use ...........................................................213

Section 1003: Nonconforming Buildings or Structures ..............................214

Section 1004: Nonconforming Lots of Record ...........................................216

Section 1005: Nonconforming Signs..........................................................216

Section 1006: Registration of Non-Conformity...........................................217

**Article XI: Administration and Enforcement** ...........................................**219**

Section 1101: Applicability.........................................................................219

Section 1102: Repairs and Maintenance ...................................................219

Section 1103: Authorization of Types of Uses ...........................................219

Section 1104: Required Permits .................................................................219

PLUM BOROUGH                                          ZONING ORDINANCE

Section 1105: Procedure for Obtaining Zoning Approval Permit ................................220

Section 1106: Content of Application for Zoning Permit.....................................221

Section 1107: Procedure for Obtaining a Grading Permit *(AT ISSUE IN AREA)* 222

Section 1108: Procedure for Obtaining a Building Permit .....................................222

Section 1109: Procedures for Obtaining an Occupancy Permit ...............................222

Section 1110: Temporary Occupancy Permit ......................................................223

Section 1111: Revocation of Occupancy Permit..................................................223

Section 1112: Liability Disclaimer .....................................................................223

Section 1113: Enforcement Penalties.................................................................223

Section 1114: Causes of Action.........................................................................224

Section 1115: Enforcement Remedies; Violations and Penalties...........................224

Section 1116: Fees ..........................................................................................225

Section 11017: Amendments.............................................................................225

Section 1118: Zoning Officer.............................................................................226

**Article XII: Zoning Hearing Board** ...................................................................**227**

Section 1201: MPC Provisions ..........................................................................227

Section 1202: Membership ...............................................................................227

Section 1203: Organization ..............................................................................228

Section 1204: Expenditures; Fees .....................................................................228

Section 1205: Powers and Functions .................................................................228

Section 1206: Hearing Procedures ....................................................................229

Section 1207: Decisions ...................................................................................230

Section 1208: Standards for Review of Variance Requests ..................................231

Section 1209: Standards for Review of Special Exception Requests......................231

Section 1210: Appeals to Court .........................................................................231

**Article XIII: Airport Overlay District** ..................................................................**233**

Section 1301: Purpose .....................................................................................233

Section 1302: Relation to Other Zone Districts ...................................................233

Section 1303: Establishment of Airport Zones ....................................................233

Section 1304: Permit Applications .....................................................................233

Section 1305: Variance ....................................................................................234

Section 1306: Use Restrictions..........................................................................234

Section 1307: Pre-Existing Non-Conforming Uses ..............................................234

Section 1308: Obstruction Marking and Lighting.................................................234

Section 1309: Violations and Penalties.............................................................235

Section 1310: Appeals.......................................................................................235

Section 1311: Conflicting Regulations ............................................................235

## TABLES

Table 1 – RR – Rural Residential District ..........................................................60

Table 2 – SR - Single Family Residential District .............................................61

Table 3 – MR - Multifamily Residential District .................................................62

Table 4 – NC – Neighborhood Mixed Use Commercial District ........................63

Table 5 – GC – General Commercial District ....................................................64

Table 6 – HC – Highway Commercial District....................................................65

Table 7 – LI – Light Industrial District ...............................................................65

Table 8 – HI – Heavy Industrial District ............................................................66

Table 9 – S – Conservation District ..................................................................67

Table 10 – M – Municipal District ......................................................................67

Table 11 – Table of Authorized Principal Uses..................................................69

Table 12 – Table of Authorized Accessory Uses and Structures ......................75

Table 13 – Carport Size & Heights ...................................................................78

Table 14 – Detached Garage Size and Heights ...............................................79

Table 15 – Shed Size & Heights .......................................................................81

Table 16 – Storage Building Size & Heights......................................................82

Table 17 – Recycling Requirements................................................................136

Table 18 – Required Bufferyards .....................................................................153

Table 19 – Parking Ratios ...............................................................................166

Table 20 – Berths Required (retail, Industrial, and Manufacturing)..................171

Table 21 – Berths Required (Auditoriums, Convention Halls, and Office Buildings) ................171

## FIGURES

Figure 1 – Yard Type Illustration ......................................................................55

Figure 2 – Parking Dimension standards .........................................................161

Figure 3 – Part 77 Surface Area......................................................................236

**{This page is intentionally blank)**

## Article XI: Administration and Enforcement

### Section 1101: Applicability

A. It shall be unlawful to use or occupy any structure or lot or part thereof until zoning approval has been issued by the Borough. Further, no structure shall be erected, added to, or otherwise have any structural alterations made to it until zoning approval has been issued by the Borough. No zoning approval shall be issued until prior approvals and requirements of this Ordinance and the Borough's SALDO, have been complied with, including but not limited to Conditional Use, use by Special Exception and recording of the final plat of a subdivision or land development. Any zoning approval issued in conflict with the provisions of this Ordinance shall be null and void.

B. Zoning approval shall state that the proposed use of the structure or lot conforms to the requirements of this Ordinance. Any change in use shall require zoning approval as set forth Article I of this Ordinance.

### Section 1102: Repairs and Maintenance

A. Repairs and maintenance – Ordinary repairs and maintenance to existing structures that do not involve an expansion or change of a use or structure shall not by themselves be regulated by this Ordinance.

### Section 1103: Authorization of Types of Uses

A. Permitted by Right Uses. The Zoning Officer shall issue a permit under this Ordinance in response to an application for a use that is permitted by right if it meets all of the requirements of this Ordinance.

B. Special Exception use or application requiring a variance. A permit under this Ordinance for a use requiring a special exception or variance shall be issued by the Zoning Officer only in response to a written approval by the ZHB following a hearing.

C. Conditional Use. A permit under this Ordinance for a use requiring conditional use approval shall be issued by the Zoning Officer only after the Borough Council grants conditional use approval.

### Section 1104: Required Permits

A. Zoning permit. A permit issued indicating that a proposed use, building or structure is in accordance with the provisions of the Zoning Ordinance or with an order of the Zoning Hearing Board. A zoning permit is needed to:

   1. Erect, reconstruct, move, structurally alter or enlarge any structure or building.

   2. Use or occupy any vacant land.

   3. Change the use of a structure or land to a different use.

   4. Change a nonconforming use.

   5. Establish or operate a temporary use of land or building.

B. Grading permit. A permit issued by the Borough to authorize work to be performed in compliance with, and as required by, the Borough's Grading Ordinance.

C. Building permit. A permit indicating that a proposed construction, alteration or reconstruction of a structure is in accordance with the provisions of the Borough's Building Code.

    1. Such a permit shall not be confused with a zoning permit or with an occupancy certificate as may be required under the terms of this Ordinance.

D. Occupancy certificate. A certificate issued upon completion of the construction of a structure or changes in use of structure or parcel of land, indicating that the premises comply with the provisions of this Ordinance and the Borough's Building Code.

## Section 1105: Procedure for Obtaining Zoning Approval Permit

A. Application submission. Applications for a zoning approval permit shall be submitted to the Zoning Officer on the forms prescribed by Borough and with the information required by this Ordinance.

    1. All fees shall be paid at the time the permit is issued.

    2. No application shall be accepted for formal review until all required items have been submitted.

    3. Upon submission, the Zoning Officer shall check the contents of the applications and notify the applicant of any deficiencies within seven (7) days.

B. Application review/approval by Zoning Officer.

    1. The Zoning Officer shall approve or disapprove applications for zoning approval permits in accordance with the literal terms of this Ordinance, and no permit shall be issued for any structure or use in violation of any provision of this Ordinance except where a variance has been properly granted by the Zoning Hearing Board.

    2. If the application requires conditional use approval from the Borough Council or special exception approval from the Zoning Hearing Board, said approvals shall be granted prior to issuance of a zoning approval permit by the Zoning Officer.

    3. If the application involves a subdivision or land development, as defined by the Subdivision and Land Development Ordinance, the plan shall be reviewed and the preliminary plans shall be approved in accordance with the procedures specified in the Subdivision and Land Development Ordinance prior to issuance of a zoning approval permit by the Zoning Officer.

    4. If the application involves a planned residential development, as defined herein, the plan shall be reviewed and the tentative plans shall be approved in accordance with the procedures specified in this Ordinance prior to issuance of a zoning approval permit by the Zoning Officer.

C. Other governmental approvals. The Zoning Officer shall not issue any zoning approval permit until the applicant submits copies of any approvals and/or permits required from other governmental agencies. Such approvals or permits may include, but are not limited to, one (1) or more of the following:

    1. Confirmation from the sewer and water authority of sewer and water service or a permit from the Allegheny County Health Department for an on-lot system.

2. PennDOT highway access permits

3. County or Borough driveway access/curb cut permits.

4. Pennsylvania Department of Environmental Protection erosion/sedimentation and/or obstruction permits.

5. Reviews by Allegheny County Conservation District.

6. Reviews by Allegheny County Economic Development, Planning Division.

## Section 1106: Content of Application for Zoning Permit

A. When applying for a zoning approval permit, the applicant shall submit the following items to the Zoning Officer:

1. A completed zoning permit application form.

2. A scaled site plan which is stamped by a Professional Land Surveyor and includes the following:

    a. Name and address of the applicant and landowner (if other than applicant).

    b. Address of the property and identification of zoning district in which it is located.

    c. Subdivision name and lot number (if applicable).

    d. County lot and block number.

    e. Scale of the drawing (typical engineering units), north arrow, and a key to all symbols.

    f. The location, dimensions and height of all existing and proposed structures or uses (including fences, walls, screens, lighting fixtures, signs or other site improvements) and the type and location (distance in feet) of existing structures or uses on all abutting properties.

    g. Distances (in feet) between all existing and proposed structures or uses on the property and from all structures or uses to all property lines.

    h. All existing and proposed easements and/or ROW, showing locations, widths, and purposes.

    i. The location, number, size, and method of calculation of any required off-street parking spaces (if applicable).

    j. All points of ingress and egress to and from the property (e.g., driveways) along with proposed grades and sight distances.

    k. Identification of any floodplain districts, areas of steep slopes, prior mining activity, landslide prone soils, fill areas, or airport impact zones which would be impacted by the proposed use.

3. Stormwater management and erosion/sedimentation plans for the property if required by Borough's Stormwater Management Ordinance (if applicable).

4. A landscaping plan showing required plantings (if applicable).

5. Any other information required by the Zoning Officer in order to determine compliance with the provisions of this Ordinance.

**Section 1107: Procedure for Obtaining a Grading Permit**

A. Application submission. Application for a grading permit shall be submitted to the Zoning Officer on forms prescribed by the Borough and with the information required by the Borough's Grading Ordinance. All fees shall be paid at the time of application.

**Section 1108: Procedure for Obtaining a Building Permit**

B. Application submission. Application for a building permit shall be submitted to the Building Code Officer (BCO) on forms prescribed by the Borough and with the information required by the Borough Building Code. All fees shall be paid at the time the permit is issued.

**Section 1109: Procedures for Obtaining an Occupancy Permit**

A. Application submission.

1. Applications for an occupancy permit shall be submitted to the Building Code Officer (BCO) at least twenty (20) days prior to the proposed occupancy or use of the structure or lot.

2. The application shall be on the form prescribed by Borough, signed by the applicant and landowner (if other than the applicant).

3. The applicant shall submit evidence of the receipt of final approvals and/or permits required from Plum Borough or other government agencies, including but not limited to any of the following as applicable:

   a. Borough zoning approval permit.

   b. Borough building permit and approved final building inspection.

   c. Borough or County Fire Marshal approval.

   d. PennDOT, County or Borough approval of any street openings or driveway accesses which were authorized by permit.

   e. County Health Department approval of plumbing systems.

   f. Approval of connections to public sewer and water systems.

   g. Pennsylvania Department of Environmental Protection approval of any dams, obstructions or erosion/sedimentation controls which were authorized by permit.

   h. Any other required permits or approvals not specifically listed above.

4. The applicant shall pay the required fee for the occupancy permit and any other outstanding fees.

B. Inspection by Zoning Officer.

1. Within ten (10) days following the application for an occupancy permit or notification of completion of the work, the Zoning Officer and/or designated representatives shall inspect the subject structure or use. If the structure or use complies with all applicable provisions of this Ordinance and has been completed in accordance with approved plans, the occupancy permit shall be issued.

2. In the event that the subject structure or use does not comply, the Zoning Officer shall provide the applicant with a written list of the deficiencies and require

corrective actions. The Zoning Officer shall re-inspect the subject property upon notification that the necessary work has been completed properly.

## Section 1110: Temporary Occupancy Permit

A. A temporary occupancy permit may be issued by the Zoning Officer for no more than thirty (30) days for a part of a building or structure to be used on a temporary basis while work continues on the remainder.

B. All conditions for temporary occupancy shall be stated on the permit.

## Section 1111: Revocation of Occupancy Permit

A. The Zoning Officer may revoke or suspend an occupancy permit upon determining that a failure of compliance with any part of this Ordinance or any other applicable law or regulation exists.

B. The revocation shall be in writing, in accordance with the requirements of this Ordinance, referring to the applicable ordinances violated and shall be sent by certified mail to the last known address of the permittee or landowner (if not permittee). Upon such revocation, any further use or occupancy of said land, structure or building without an approved permit shall be considered a violation of this Ordinance and subject to all enforcement remedies listed below.

## Section 1112: Liability Disclaimer

A. The granting of a zoning permit or occupancy permit shall not constitute a representation, guarantee or warranty of any kind by Plum Borough, or by an official or employee thereof, of the structural integrity of a building or structure, the suitability or safety of subsurface soil conditions over which a building/structure is located, or the practicability or safety of any stormwater management structure or control technique or other environmental protection control, nor shall it create any liability upon or cause of action against Plum Borough, any official or employee for any damage that may result from a structure or use for which a permit has been issued.

B. Permits issued pursuant to this Ordinance attest only to the conformance of a structure or use to the zoning requirements contained herein.

## Section 1113: Enforcement Penalties

A. Users should be aware that the following Section is a summary of requirements of the MPC – Act of 1968, P.L. 805, No. 247, as reenacted and amended, and should refer to the MPC for the complete requirements under Pennsylvania Law.

B. If it appears to the Borough that a violation of this Zoning Ordinance has occurred, the Borough shall initiate enforcement proceedings by sending an enforcement notice as provided in this Section.

C. The enforcement notice shall be sent to the owner of record of the parcel on which the violation has occurred, to any person who has filed a written request to receive enforcement notices regarding that parcel and to any other person requested in writing by the owner of record.

D. The enforcement notice shall state at least the following:



1. The name of the owner of record and any other person against whom the Borough intends to take action.

2. The location of the property in violation.

3. The specific violation with a description of the requirements which have not been met, citing in each instance the applicable provisions of this Ordinance.

4. The date before which the steps for compliance must be commenced and the date before which the steps must be completed.

5. That the recipient of the notice has the right to appeal to the Borough ZHB within thirty (30) days of the mailing date of the notice in accordance with procedures set forth in this Ordinance.

6. That failure to comply with the notice within the time specified, unless extended by appeal to ZHB, constitutes a violation, and upon being found liable therefore in a civil enforcement proceeding, shall pay a fine of not more than $500, plus all court costs, including reasonable attorney fees incurred by the Borough, or alternatively sentenced to pay a fine or not more than the maximum permitted under Pennsylvania law as the same may be from time to time amended and in effect as of the date of conviction. In default of payment of imposed fines, the offender may be imprisoned for a term not to exceed ninety (90) days.

**Section 1114: Causes of Action**

A. Users should be aware that the following Section is a summary of requirements of the MPC – Act of 1968, P.L. 805, No. 247, as reenacted and amended, and should refer to the MPC for the complete requirements under Pennsylvania Law.

B. In case any building, structure, landscaping, sign, or land is or is proposed to be erected, constructed, reconstructed, altered, repaired, converted, maintained or used in violation of this Ordinance, the Borough Council or, with the approval of the Borough Council, an officer of the Borough or any aggrieved owner or tenant of real property who shows that his property or person will be substantially effected by the alleged violation, in addition to other remedies, may institute any appropriate action or proceeding to prevent, restrain, correct or abate such building, structure, landscaping, sign or land or to prevent, in or about such premises, any act, conduct, business or use constituting a violation. When any such action is instituted by a landowner or tenant, notice of that action shall be served upon the Borough, by certified mail, at least thirty (30) days prior to the time the action is to begin by serving a copy of the complaint on the Borough Council. No such action may be maintained unless such notice has been given.

C. Jurisdiction. Magisterial district judges shall have initial jurisdiction over proceedings brought under §1007 of this Article.

**Section 1115: Enforcement Remedies; Violations and Penalties**

A. Users should be aware that the following Section is a summary of requirements of the MPC – Act of 1968, P.L. 805, No. 247, as reenacted and amended, and should refer to the MPC for the complete requirements under Pennsylvania Law.

B. Any person, partnership, or corporation who or which has violated or permitted the violation of the provisions of this Zoning Ordinance shall, upon being found liable therefore

in a civil enforcement proceeding commenced by the Borough, pay a fine of not more than $500, plus all court costs, including reasonable attorney fees incurred by the Borough as a result thereof, or alternatively, sentenced to pay a fine of not more than the maximum permitted under Pennsylvania law as the same may be from time to time amended and in effect as of the date of conviction. No judgment shall commence or be imposed, levied or payable until the date of the determination of a violation by the District Justice. If the defendant neither pays nor timely appeals the judgment, the Borough may enforce the judgment pursuant to the applicable rules of civil procedure. Each day that a violation continues shall constitute a separate violation, unless the District Justice determining that there has been a violation further determines that there was a good-faith basis for the person, partnership or corporation violating this Ordinance to have believed that there was no violation, in which event there shall be deemed to have been only one such violation until the fifth day following the date of the determination of a violation by the District Justice; and thereafter each day that a violation continues shall constitute a separate violation. All judgments, costs and reasonable attorney fees collected for the violation of this Ordinance shall be paid to the Borough.

C. The Court of Common Pleas of Allegheny County, upon petition, may grant an order or stay, upon cause shown, tolling the per diem fine pending a final adjudication of the violation and judgment.

D. Nothing contained in this Section shall be construed or interpreted to grant to any person or entity other than the Borough the right to commence any action for enforcement pursuant to this Section.

## Section 1116: Fees

A. The Borough Council shall establish and revise, from time to time, a schedule of fees by resolution, as well as a collection procedure, for all applications submitted under the provisions of this Ordinance. The schedule of fees shall be available to the public from the Zoning Officer or Borough Manager.

## Section 1117: Amendments

A. Users should be aware that the following Section is a summary of requirements of the MPC – Act of 1968, P.L. 805, No. 247, as reenacted and amended, and should refer to the MPC for the complete requirements under Pennsylvania Law.

B. The regulations and provisions of this Ordinance may be amended from time to time, upon recommendation of the Planning Commission or the Borough Council, or by application of an effected party.

C. Enactment of Amendments. Zoning amendments procedures shall adhere to the requirements of §609 of the MPC, 53 P.S. §10609.

D. Public Hearing. The Borough Council shall hold a public hearing on a proposed amendment pursuant to public notice, and pursuant to mailed notice and electronic notice to an owner of a tract or parcel of land located within a municipality or an owner of the mineral rights in a tract or parcel of land within the municipality who has made a timely request in accordance with §109 of the MPC before voting on enactment of an amendment. In addition, if the proposed amendment involves a Zoning Map change,

notice of said public hearing shall be conspicuously posted by the Borough at points deemed sufficient by the Borough along the tract to notify potentially interested citizens. The affected tract or area shall be posted at least one (1) week prior to the date of the hearing.

    1. In addition to the requirement that the notice be pasted, where the proposed amendment involves a zoning map change, notice of the public hearing shall be mailed by the municipality at least thirty (30) days prior to the date of the hearing by first class mail to the addresses to which real estate tax bills are sent for all real property located within the area being rezoned, as evidenced by tax records within the possession of the municipality. The notice shall include the location, date and time of the public hearing. A good faith effort and substantial compliance shall satisfy the requirements of this Section. This clause shall not apply when the rezoning constitutes a comprehensive rezoning.

E. Planning Commission Review. In the case of an amendment other than that prepared by the Planning Commission, the Borough Council shall submit the amendment to the Planning Commission at least thirty (30) days prior to the hearing on the proposed amendment for recommendations.

F. County Planning Review. The recommendation of the County planning agency shall be made to the Borough Council within forty-five (45) days and the proposed action shall not be taken until such recommendation is made. If, however, the County fails to act within forty-five (45) days, the Borough Council shall proceed without its recommendation.



## Section 1118: Zoning Officer

A. Appointment. The Zoning Officer(s) shall be appointed by the Borough Council pursuant to qualifications that may be established by Council. The Zoning Officer shall not hold any elective office within the Borough.

B. Duties and powers. The Zoning Officer's duties and powers shall include the following:

    1. Administer this Ordinance in accordance with its literal terms, including to receive and examine all applications required under the terms of this Ordinance, and issue or refuse permits within the provisions of this Ordinance.

    2. Conduct inspections to determine compliance, and receive complaints of violation of this Ordinance.

    3. Keep records of applications, permits, certificates, written decisions, and variances granted by the ZHB and of enforcement orders, with all such records being the property of the Borough and being available for public inspection.

    4. Review proposed subdivisions and land developments for compliance with this Ordinance.

    5. Take enforcement actions as provided by the Pennsylvania MPC.

    6. Maintain available records concerning nonconformities, provided that the Borough is not required to document every nonconformity.

    7. Serve such other functions as are provided in this Ordinance.

# Article XII: Zoning Hearing Board

## Section 1201: MPC Provisions

A. Users should be aware that the following Sections are a summary of requirements of the MPC – Act of 1968, P.L. 805, No. 247, as reenacted and amended, and should refer to the MPC for the complete requirements under Pennsylvania Law.

## Section 1202: Membership

A. Appointment.  The membership of the ZHB shall consist of five (5) residents of the Borough appointed by motion of the Borough Council.  Their terms of office shall be three (3) years and shall be so fixed that the terms of office of one member shall expire each year.  The ZHB shall promptly notify the Borough Council of any vacancies that occur. Appointments to fill vacancies shall be only for the unexpired portion of the term.  Members of the ZHB shall hold no other elected or appointed office in the municipality nor shall any member be an employee of the municipality.

B. The Borough Council may appoint by resolution at least one (1) but no more than three (3) residents of the Borough to serve as alternate members of the board.  The term of office of an alternate member shall be three (3) years.  Alternates shall hold no other elective or appointive office in the Borough including service as a member of the Planning Commission or as a Zoning Officer, nor shall any alternate be an employee of the Borough. Any alternate may participate in proceedings or discussions of the board but shall not be entitled to vote as a member of the board nor be compensated unless designated as a voting alternate member pursuant to the following process:

   1. The Chairman of the Board may designate alternate members of the board to replace any absent or disqualified member and if, by reason of absence or disqualification of a member, a quorum is not reached, the Chairman of the Board shall designate as many alternate members of the board to sit on the board as may be needed to provide a quorum.

   2. Any alternate member of the board shall continue to serve on the board in all proceedings involving the matter or case for which the alternate was initially appointed until the board has made a final decision on the matter or case.

   3. Designation of an alternate shall be made on a case-by-case basis in rotation according to declining seniority among all alternates.

C. Vacancies. Appointments to fill vacancies on the Board shall be for the duration of the unexpired portion of the term only.

D. Removal of members. Any member of the Board may be removed for malfeasance, misfeasance, or nonfeasance in office or for other just cause by a majority vote of the Council.  No vote shall take place until such time as the member has received a fifteen (15) day advance notice of the intent to take such a vote.  A hearing shall be held in connection with the vote if the member shall request it in writing.

E. Compensation. Members of the board shall not receive compensation for the performance of their duties.

227

**Section 1203: Organization**

A. Conduct of the Board. The ZHB shall elect from its own membership its officers, who shall serve annual terms as such and may succeed themselves. For the conduct of any hearing and the taking of any action, a quorum shall be not less than a majority of all the members of the Board. The Board may appoint a hearing officer from its own membership to conduct the hearing on its behalf, and the parties may waive further action by the Board and accept the decision or findings of the hearing officer as final, as provided in §908 of the MPC.

B. Establishment of procedure. The ZHB may make, alter, and rescind rules and forms for its procedure, consistent with ordinances of the Borough and the laws of the Commonwealth. The Board shall maintain full public records of its business.

**Section 1204: Expenditures; Fees**

A. Expenditures. Within the limits of funds appropriated by the Council, the ZHB may employ or contract for secretaries, clerks, legal counsel, consultants, and other technical and clerical services.

B. Fees. An applicant before the ZHB shall deposit with the Zoning Officer the appropriate filing fee. Fees shall be established by resolution of the Council.

**Section 1205: Powers and Functions**

The ZHB shall function in strict accordance with and pursuant to the MPC and shall have the following powers:



A. Appeals from the Zoning Officer. The Board shall hear and decide appeals where it is alleged that the Zoning Officer has failed to follow prescribed procedures or has misinterpreted or misapplied any provision of a valid ordinance or map of the Borough or any valid rule or regulation covering the duties of the Zoning Officer.

B. Special Exceptions. The Board shall hear and decide requests for special exceptions authorized by this Ordinance in accordance with the standards and criteria set forth in this Section and Article IV of this Ordinance. The Board may attach such reasonable conditions and safeguards as it may deem necessary.

C. Variances. The Board shall hear requests for variances where it is alleged that the provisions of this Ordinance create unnecessary hardship on an applicant when applied to a tract of land. In granting a variance, the Board may attach such reasonable conditions and safeguards as it may deem necessary.

D. Validity of the Zoning Ordinance. The Board shall hear and make findings on challenges to the validity of any provision of this Ordinance with respect to substantive questions.

E. Jurisdiction in the matters as granted by §909.1 of the MPC. 53 P.S. §10909.1.

**Section 1206: Hearing Procedures**

The ZHB shall conduct hearings and make decisions in accordance with the following requirements.

Filing appeals and requests to the ZHB - Requests for hearings before the ZHB shall be made as follows:

A. An appeal to the ZHB may be filed by the landowner affected, any officer or agency of the Borough, or any person aggrieved. Such appeal shall be taken within the time as stipulated by the MPC and the rules of the Board, by filing with the Zoning Officer a notice of appeal specifying the grounds thereof. The appropriate fee, established by Resolution of the Borough, shall be paid in advance for each appeal or application. Requests for a variance and special exception may be filed with the Board by any landowner or any tenant with the permission of such landowner.

B. Notice – Public notice shall be given pursuant to this Ordinance and written notice shall be given to the applicant, Zoning Officer, and to any person who has made timely request for the same. Written notices shall be given at such time and in such manner as shall be prescribed by rules of the Board. In addition to the written notice provided herein, written notice of said hearing shall be conspicuously posted on the affected tract of land at least one (1) week prior to the hearing.

C. Timing – A hearing shall be held within sixty (60) days from the official application date requesting a hearing unless the applicant has agreed to an extension of time. The hearings shall be conducted by the Board or the Board may appoint any member or an independent attorney as a hearing officer. The decision, or, when no decision is called for, the findings shall be made by the Board; however, the appellant or the applicant, as the case may be, in addition to the Borough, may prior to the decision of the hearing, waive decision or findings by the Board and accept the decision or findings of the hearing officer as final.

D. Parties to the Hearing – The parties to the hearing shall be the Borough, any person affected by the application who has made timely appearance of record before the Board, and any other person including civic or community organizations permitted to appear by the Board. The Board shall have power to require that all persons who wish to be considered parties enter appearances in writing on forms provided by the Board for that purpose.

E. Powers of the Chairman – The Chairman, Acting Chairman, or hearing officer, presiding, shall have the power to administer oaths and issue subpoenas to compel the attendance of witnesses and the production of relevant documents and papers, including witnesses and documents requested by the parties.

F. Rights of the Parties – The parties shall have the right to be represented by counsel and shall be afforded the opportunity to respond, to present evidence and to argue and cross-examine adverse witnesses on all relevant issues.

G. Exclusion of Evidence -- Formal rules of evidence shall not apply, but irrelevant, immaterial or unduly repetitious evidence may be excluded by the Board.

H.  Record of the Proceedings – A stenographic record of the proceedings shall be made by a court reporter.  The appearance fee for the court reporter shall be shared equally by the applicant and the Board.  Any party requesting the original transcript or a copy of the transcript shall bear the cost of the same.  Copies of graphic or written material received in evidence shall be made available to any party at cost.

I.  Communications – Once a formal application has been duly filed, the Board shall not communicate, directly or indirectly, with any party or his representative in connection with any issue involved except upon notice and opportunity for all parties to participate.  Further, the Board shall not take notice of any communication unless the parties are afforded an opportunity to contest the material and shall not inspect the site or its surroundings with any party or his representative unless all parties are given an opportunity to be present.

**Section 1207: Decisions**

A.  The Board or the hearing officer, as the case may be, shall render a written decision or, when no decision is called for; make written findings on the application within forty-five (45) days after the last hearing before the Board or hearing officer.  Where the application is contested or denied, each decision shall be accompanied by findings of fact and conclusions based thereon together with the reasons therefore.

Conclusions based on any provisions of any act or of any ordinance, rule or regulation shall contain a reference to the provision relied on and the reasons why the conclusion is deemed appropriate in the light of the facts found.  If the hearing is conducted by a hearing officer and there has been no stipulation that his decision or findings are final, the Board shall make his report and recommendations available to the parties within forty-five (45) days and the parties shall be entitled to make written representations thereon to the Board prior to final decision or entry of findings, and the Board's decision shall be entered no later than thirty (30) days after the report of the hearing officer.  Except for challenges filed under §916.1 of the MPC 53 P.S. §10916.1 where the Board fails to render the decision within the period required by this Subsection or fails to commence, conduct or complete the required hearing as provided in §1105.C., the decision shall be deemed to have been rendered in favor of the applicant unless the applicant has agreed in writing or on the record to an extension of time.  When a decision has been rendered in favor of the applicant because of the failure of the Board to meet or render a decision as hereinabove provided, the Board shall give public notice of said decision within ten (10) days from the last day it could have met to render a decision.  If the Board shall fail to provide such notice, the applicant may do so.  Nothing in this Subsection shall prejudice the right of any party opposing the application to appeal the decision to a court of competent jurisdiction.

B.  A copy of the final decision or, where no decision is called for, of the findings shall be delivered to the applicant personally or mailed to him not later than the day following its date.  To all other persons who have filed their name and address with the Board not later than the last day of the hearing, the Board shall provide by mail or otherwise, brief notice of the decision or findings and a statement of the place at which the full decision or findings may be examined.

**Section 1208: Standards for Review of Variance Requests**

A. Required Findings – The ZHB may grant a variance to the provisions of this Ordinance, provided that the findings prescribed in §910.2 of the MPC 53 P.S. §10910.2. are made where relevant in a given case.

B. Conditions – In granting any variance, the ZHB may attach such reasonable conditions and safeguards as it may deem necessary to implement the purposes of this Ordinance.

C. If the variance involves physical improvements that have not been substantially initiated within two (2) years of the date of approval or authorization approval of the variance, the approval shall lapse.

   a. The variance approval shall also lapse if, after starting construction, the construction is discontinued for a period of two (2) years.

   b. A variance approval shall not lapse if, the variance is associated with a current land development approval.

**Section 1209: Standards for Review of Special Exception Requests**

A. The ZHB shall hear and decide all requests for special exceptions, as identified within this Section and Article IV of this Ordinance.

**Section 1210: Appeals to Court**

A. The provisions for appeals to court that are stated in Article X-A of the MPC, as amended, shall apply.

**(This page is intentionally blank)**





# THREE RIVERS LENDING
### 375 Southpointe Blvd. Suite 340 Canonsburg, PA 412-203-3379

December 8, 2021

Michael A. Lamia
665 State Park Road
New Alexandria, PA. 15670

Dear Mr. Lamia,

A bank/lender will not close on a purchase transaction until we have a occupancy permit from the borough.

If you have any questions, feel free to call or email me.

Sincerely,

*Kurt Ziegler*
Kurt Ziegler Date: 2020.12.08 09:31

Three Rivers Lending
Kurt J. Ziegler
Senior Loan Officer
Three Rivers Lending
kurt@threeriverslending.com
www.threeriverslending.com
412-203-3389
NMLS #324332



OneGreatBigSmallBoro



Date:            February 18, 2022

Subject:         103 McJunkin Road; List of Violations in re 68 P.S. § 1081

Install CO detector in Bedroom Hallway

SECTION 705 CARBON MONOXIDE ALARMS AND DETECTION [F] 705.1 General. Carbon monoxide alarms shall be installed in dwellings in accordance with Section 1103.9 of the International Fire Code, except that alarms in dwellings covered by the International Residential Code shall be installed in accordance with Section R315 of that code.

Install Smoke detectors in each bedroom, Bedroom Hallway and Basement.

[F] 704.6.1.1 Group R-1. Single- or multiple-station smoke alarms shall be installed in all of the following locations in Group R-1: 1. In sleeping areas. 2. In every room in the path of the means of egress from the sleeping area to the door leading from the sleeping unit. 3. In each story within the sleeping unit, including basements. For sleeping units with split levels and without an intervening door between the adjacent levels, a smoke alarm installed on the upper level shall suffice for the adjacent lower level provided that the lower level is less than one full story below the upper level. [F] 704.6.1.2 Groups R-2, R-3, R-4 and I-1. Single

Install new Dryer vent cover.

403.5 Clothes dryer exhaust. Clothes dryer exhaust systems shall be independent of all other systems and shall be exhausted outside the structure in accordance with the manufacturer's instructions

Install GFCI outlets to Laundry

605.2 Receptacles. Every habitable space in a dwelling shall contain not less than two separate and remote receptacle outlets. Every laundry area shall contain not less than one grounding-type receptacle or a receptacle with a ground fault circuit interrupter. Every bathroom shall contain not less than one receptacle. Any new bathroom receptacle outlet shall have ground fault circuit interrupter protection. All receptacle outlets shall have the appropriate faceplate cover for the location

Main Bath install a GFCI outlet

605.2 Receptacles. Every habitable space in a dwelling shall contain not less than two separate and remote receptacle outlets. Every laundry area shall contain not less than one grounding-type receptacle or a receptacle with a ground fault circuit interrupter. Every bathroom shall contain not less than one receptacle. Any new bathroom receptacle outlet shall have ground fault circuit interrupter protection. All receptacle outlets shall have the appropriate faceplate cover for the location

Install 5/8 type X Drywall to entire garage ceiling, tape seal all seams and edges

*Existing drywall on garage wall tape and seal all seams and edges*
# R702.3.5 Application
Supports and fasteners used to attach gypsum board and gypsum panel products shall comply with Table R702.3.5. Gypsum sheathing shall be attached to exterior walls in accordance with Table R602.3(1). Gypsum board and gypsum panel products shall be applied at right angles or parallel to framing members. All edges and ends of gypsum board and gypsum panel products shall occur on

the framing members, except those edges and ends that are perpendicular to the framing members. Interior gypsum board shall not be installed where it is directly exposed to the weather or to water.

TABLE R702.3.5

MINIMUM THICKNESS AND APPLICATION OF GYPSUM BOARD AND GYPSUM PANEL PRODUCTS

| THICKNESS OF GYPSUM BOARD OR GYPSUM PANEL PRODUCTS (inches) | APPLICATION | ORIENTATION OF GYPSUM BOARD OR GYPSUM PANEL PRODUCTS TO FRAMING | MAXIMUM SPACING OF FRAMING MEMBERS (inches o.c.) | MAXIMUM SPACING OF FASTENERS (inches) | | SIZE OF NAILS FOR APPLICATION TO WOOD FRAMING[c] |
|---|---|---|---|---|---|---|
| | | | | Nails[a] | Screws[b] | |
| Application without adhesive | | | | | | |
| $^3/_8$ | Ceiling[d] | Perpendicular | 16 | 7 | 12 | 13 gage, $1^1/_4$" long, $^{19}/_{64}$" head; 0.098" diameter, $1^1/_4$" long, annular-ringed; or 4d cooler nail, 0.080" diameter, $1^3/_8$" long, $^7/_{32}$" head. |
| | Wall | Either direction | 16 | 8 | 16 | |
| ½ | Ceiling | Either direction | 16 | 7 | 12 | 13 gage, $1^3/_8$" long, $^{19}/_{64}$" head; 0.098" diameter, $1^1/_4$" long, annular-ringed; 5d cooler nail, 0.086" diameter, |
| | Ceiling[d] | Perpendicular | 24 | 7 | 12 | |
| | Wall | Either | 24 | 8 | 12 | |

| | | direction | | | | |
|---|---|---|---|---|---|---|
| | Wall | Either direction | 16 | 8 | 16 | $1\frac{5}{8}$" long, $\frac{15}{64}$" head; or gypsum board nail, 0.086" diameter, |
| $\frac{5}{8}$ | Ceiling | Either direction | 16 | 7 | 12 | 13 gage, $1\frac{3}{8}$" long, $\frac{19}{64}$" head; 0.098" diameter, $1\frac{3}{8}$" long, annular-ringed; 6d cooler nail, |
| | Ceiling | Perpendicular | 24 | 7 | 12 | 0.092" diameter, $1\frac{7}{8}$" long, $\frac{3}{4}$" head; or gypsum board nail, 0.0915" diameter, $1\frac{7}{8}$" long, $\frac{19}{64}$" head. |
| | Type X at garage ceiling beneath habitable rooms | Perpendicular | 24 | 6 | 6 | $1\frac{7}{8}$" long 6d coated nails or equivalent drywall screws. Screws shall comply with Section R702.3.5.1 |
| | Wall | Either direction | 24 | 8 | 12 | 13 gage, $1\frac{5}{8}$" long, $\frac{19}{64}$" head; 0.098" diameter, |
| | Wall | Either direction | 16 | 8 | 16 | $1\frac{3}{8}$" long, annular-ringed; 6d cooler nail, 0.092" diameter, $1\frac{7}{8}$" long, $\frac{3}{4}$" head; or gypsum board nail, 0.0915" diameter, |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | | | | $1\frac{7}{8}$" long, $\frac{19}{64}$" head. |
| **Application with adhesive** | | | | | | |
| $\frac{3}{8}$ | Ceiling[d] | Perpendicular | 16 | 16 | 16 | Same as above for $\frac{3}{8}$" gypsum board and gypsum panel products. |
| | Wall | Either direction | 16 | 16 | 24 | |
| $\frac{1}{2}$ or $\frac{5}{8}$ | Ceiling | Either direction | 16 | 16 | 16 | Same as above for $\frac{1}{2}$" and $\frac{5}{8}$" gypsum board and gypsum panel products, respectively. |
| | Ceiling[d] | Perpendicular | 24 | 12 | 16 | |
| | Wall | Either direction | 24 | 16 | 24 | |
| Two $\frac{3}{8}$ layers | Ceiling | Perpendicular | 16 | 16 | 16 | Base ply nailed as above for $\frac{1}{2}$" gypsum board and gypsum panel products; face ply installed with adhesive. |
| | Wall | Either direction | 24 | 24 | 24 | |

Garage door opener must plug into an outlet must be a GFCI outlet (No Extension Cords)

605.4 Wiring. Flexible cords shall not be used for permanent wiring, or for running through doors, windows, or cabinets, or concealed within walls, floors, or ceiling

<u>In Garage ceiling do not bury electrical junction box in ceiling, must be exposed for access.</u> 605.1 Installation. Electrical equipment, wiring and appliances shall be properly installed and maintained in a safe and approved manner.

<u>Sump pumps must plug into an outlet (No Extension Cords)</u>

605.4 Wiring. Flexible cords shall not be used for permanent wiring, or for running through doors, windows, or cabinets, or concealed within walls, floors, or ceilings.

<u>Kitchen counter outlets must be GFCI protected.</u>

605.2 Receptacles. Every habitable space in a dwelling shall contain not less than two separate and remote receptacle outlets. Every laundry area shall contain not less than one grounding-type receptacle or a receptacle with a ground fault circuit interrupter. Every bathroom shall contain not less than one receptacle. Any new bathroom receptacle outlet shall have ground fault circuit interrupter protection. All receptacle outlets shall have the appropriate faceplate cover for the location

<u>Front door exterior deck, install graspable handrail to deck stairs.</u>

 SECTION 307 HANDRAILS AND GUARDRAILS 307.1 General. Every exterior and interior flight of stairs having more than four risers shall have a handrail on one side of the stair and every open portion of a stair, landing, balcony, porch, deck, ramp or other walking surface that is more than 30 inches (762 mm) above the floor or grade below shall have guards. Handrails shall be not less than 30 inches (762 mm) in height or more than 42 inches (1067 mm) in height measured vertically above the nosing of the tread or above the finished floor of the landing or walking surfaces. Guards shall be not less than 30 inches (762 mm) in height above the floor of the landing, balcony, porch, deck, or ramp or other walking surface

<u>Anchor front deck railings</u>

304.12 Handrails and guards. Every handrail and guard shall be firmly fastened and capable of supporting normally imposed loads and shall be maintained in good condition.

<u>Back porch Deck is unsafe will need to be repaired or replaced, Deck sways side to side, Deck railing loose.</u>

SECTION 304 EXTERIOR STRUCTURE 304.1 General. The exterior of a structure shall be maintained in good repair, structurally sound and sanitary so as not to pose a threat to the public health, safety or welfare.

12. Exterior stairs, decks, porches, balconies and all similar appurtenances attached thereto, including guards and handrails, are not structurally sound, not properly anchored or that are anchored with connections not capable of supporting all nominal loads and resisting all load effects.

304.12 Handrails and guards. Every handrail and guard shall be firmly fastened and capable of supporting normally imposed loads and shall be maintained in good condition.

<u>Install 1 3/8" Solid Flat Slab Wood door or Fire Rated door to Garage Man door.</u>

<u>IBC</u> 714.2.3 Doors in corridors and smoke barriers. Fire doors required to have a minimum fire-protection rating of 20 minutes where located in corridor walls or smoke barrier walls having a fire-resistance rating in accordance with Table 714.2 shall be tested in accordance with NFPA 252 or UL 10C without the hose stream test. If a 20-minute fire door or fire door assembly contains glazing material, the glazing material in the door itself shall have a minimum fire-protection rating of 20 minutes and be exempt from the hose stream test. Glazing material in any other part of the door assembly, including transom lites and sidelites, shall be tested in accordance with NFPA 257, including the hose stream test, in accordance with Section 714.3. Fire doors shall also meet the requirements for a smoke-and draft-control door assembly tested in accordance with UL 1784 with an artificial bottom seal installed across the full width of the bottom of the door assembly. The air leakage rate of the door assembly shall not exceed 3.0 cfm per square foot (0.01524 m 3 /s•m 2 ) of door opening at 0.10 inch (24.9 Pa) of water for both the ambient temperature and elevated temperature tests. Louvers shall be prohibited.



# BOROUGH OF PLUM

4575 New Texas Road
Pittsburgh, PA  15239

Phone: 412-795-6800     Fax: 412-793-4061

## FIELD CORRECTION NOTICE

DATE ISSUED  3/23/22

LOCATION  103 McJunkin Road PERMIT NO. 567

ISSUED TO  M Lamia
Permit holder and/or all responsible parties

Upon inspection, the following violations were found:

At this time the Occupancy Permit for 103 McJunkin Road will not be issued due to an outstanding violation issued on 2/22/2017 for Illegal dumping of Construction materials, concrete, and large amount of fill material on said property, Failure to obtain a Grading permit under Ordinance #321, or remove fill from property.

PLEASE CALL FOR AN INSPECTION WHEN CORRECTIONS HAVE BEEN COMPLETED.   ACCEPTANCE AND APPROVAL BY THE PERSON ISSUING THIS NOTICE IS REQUIRED ON OR BEFORE_____

ISSUED BY  Kevin Fields

WHITE – ORIGINAL                    YELLOW – FILE COPY                    PINK – FIELD COPY



Borough of Plum
Received
APR 1 3 2022



**Application to the Zoning Hearing Board**

File No. _ZHB-2022-03_

| | |
|---|---|
| Name of Applicant: Michael Lamia | |
| Address:   103 McJunkin Road | |
| City: Pittsburgh | State:  PA | Zip: 15239 |
| Phone No: 1 (412) 853-8888 | E-mail address: michaellamiacontractingllc@gmail.com |
| Location of Property Involved: 103 McJunkin Road, Pittsburgh, PA 15239 | |
| | Lot & Block: 851-L-25 |

| Provision(s) of Zoning Ordinance appealed: | |
|---|---|
| **Ordinance** | **Section No.** |
| Failure to Obtain Grading Permit | #321 |
| | |
| | |
| | |
| | |
| | |

**Type of Appeal:**

☑ A.  Appeal from any order, requirement decision, or determination made by the Zoning Officer

☐ B.  Variance from the provisions of the Zoning Ordinance

☐ C.  To authorize use by special exception

☐ D.  Challenge validity of the Zoning Ordinance

☑ E.  Other  Appeal from Improper Denial of Occupancy Permit by Plum Inspector.

A previous appeal   ☐ has   ☑ has not   been made.

Applicant must provide and attach a narrative to this application including information on grounds for appeal and reasons both with respect to law and fact for granting the appeal, variance, or special exception. If hardship is claimed, state the specific hardship.

☑ Check here that narrative has been attached.

**This is to be completed if you have checked item "B" in the Type of Appeal section.**

Under Section 910.2 of the PA Municipalities Planning Code, no variance shall be granted until the applicant has established and the Zoning Hearing Board has made all of the following findings (A through E) where relevant in a given case:

☐ A.   **Unnecessary hardship due to unique physical circumstances.**

    1204.3.a  That there are unique physical circumstances or conditions, including irregularity, narrowness, or shallowness of LOT size or shape, or exceptional topographic or other physical conditions peculiar to the particular property and that the unnecessary hardship is due to such conditions and not the circumstances or conditions generally created by the provisions of the Zoning Ordinance in the district in which the property is located;

☐ B.   **Unique physical circumstances hinder property development.**

    1204.3.b  That because of such physical circumstances or conditions, there is no possibility that the property can be developed in strict conformity with the provisions of Articles Two, Three, Four, Five and Six of this Ordinance and that the authorization of a variance is therefore necessary to enable the reasonable use of such property;

☐ C.   **Unnecessary hardship not created by appellant.**

    1204.3.c  That such unnecessary hardship has not been created by the appellant;

☐ D.   **Character of the neighborhood will not change.**

    1204.3.d  That the variance, if authorized, will not alter the essential character of the neighborhood or district in which the property is located, nor substantially or permanently impair the appropriate use or development of adjacent property, nor be detrimental to the public welfare; and

☐ E.   **Appeal represents the least modification possible.**

    1204.3.e  That the variance, if authorized, will represent the minimum variance that will afford relief and will represent the least modification possible of the regulation in issue.

---

I certify that the information contained herein is true and correct.

| | | |
|---|---|---|
| Louis J. Kroeck, IV, Esquire | | April 12, 2022 |
| on Behalf of Michael Lamia | | |
| Printed Name | Signature | Date |

---

The following must be submitted to be considered a COMPLETE application:

1. Completed Zoning Hearing Board application

2. Eight (8) copies of the site plan/survey or proposed construction plans

3. Narrative

4. Fee:  $250.00 - Residential Application

      $500.00 – Non-Residential Application

## NARRATIVE

On March 23, 2022, Kevin Fields, Inspector for the Borough of Plum, went to the location of 103 McJunkin for inspection relevant to the occupancy permit Mr. Lamia has been repeatedly seeking for quite some time. During the inspection, it was relayed to my client, by Mr. Fields himself, an occupancy permit would issue for 103 McJunkin, which Mr. Ken Steinman, may also attest. Shortly after this conversation took place, Mr. Lamia, received a Field Corrective Notice dated March 23, 2022 from the Borough, denying any occupancy permit based on the following allegations or conditions:

1.      there was "illegal dumping of [c]onstruction materials, concrete, and large amount of fill material on said property;

2.      failure to obtain a [g]rading permit under Ordinance #321; or

3.      remove fill from property.

A cursory and preliminary review of the Field Corrective Notice of 3/23/2022 attached as Exhibit "1" does not support the denial of any occupancy permit at 103 McJunkin.

Pennsylvania law permits municipalities to require property owners to obtain a Use and Occupancy ("U&O") Certificate before selling real property. See 68 P.S. § 1082.1 and LXR RS V, LLC v. Municipality of Norristown, No..2019 U.S. Dist. LEXIS 173210 (E.D. Pa. Oct. 7, 2019).    Under Pennsylvania law, a municipality that requires U&O Certificates must proceed as follows: (1) if the municipal inspection of the property reveals no violations, then the municipality must issue a U&O Certificate; (2) if the inspection reveals one violation but no substantial violation, the municipality must issue a temporary U&O Certificate; and (3) if the inspection reveals at least one substantial violation, the municipality must specifically note the items on an inspection report and issue a temporary access certificate. See 68 P.S. § 1082.1. In the event that an inspection reveals a substantial violation, a purchaser has one year to rectify the violation or to demolish the building. 68 P.S. § 1083. Id. at *2. A municipality cannot refuse to issue an occupancy permit based on code violations "unless the substantial violation renders the property unfit for habitation." Section 3(d) of the Municipal Code and Ordinance Compliance Act (Act), 68 P.S. §1083(d).  The Act pertains to "municipal codes relating to building, housing, property maintenance or fire ..." and requires purchasers to "bring the building...into compliance." Section 3(a) of the Act, 68 P.S. §1083(a).  See also Altman v. Borough of Wilmerding, 108 A.3d 202 (Table), 2015 Pa. Commw. Unpub. LEXIS 29 (Pa. Commw. Ct. 2015).

Based on these provisions, Mr. Lamia, would argue, any alleged failure to cure the defects set forth in the Borough's Field Corrective Notice is/was not proper grounds for withholding an occupancy permit. Mr. Lamia also asserts there is no evidence that the alleged violations are so substantial as to render 103 McJunkin unfit for habitation nor has it been.

Firstly, there has been no illegal dumping on the property at issue nor has Mr. Lamia been cited by the Borough for the same. If so, we are under the strong belief those citations would be dismissed with prejudice. Secondly, Mr. Lamia, removed the dirt piles in question and, therefore, there is no need for a grading permit under any alleged violation of Ordinance #321. The alleged dirt piles were from the installation of the car port, which Mr. Lamia maintained, all proper permits, from the Borough. Finally, there is no fill on the property and the dirt piles have since been removed for several years.

Moreover, the Borough of Plum cites to the "illegal dumping of [c]onstruction materials and concrete on the property. This is the first my client has been notified of this new theory for the improper denial of the occupancy permit, which he has repeatedly requested and been denied without due process or equal protection of the law. Usable construction materials, for a future job, which is adequately stacked and covered, does not make the premises "unfit for habitation" and/or from being offered for rent or sale to the public. The Borough of Plum's continued stonewalling of my client and improper refusal of the occupancy permit, speaks volumes in and of itself.

Finally, Mr. Lamia, had secured a sale for the property on or about November or early December of 2021 in the amount of $207,000.00. The bank or lender would not close on the sale because of the lack of this occupancy permit through no fault of Mr. Lamia. Moreover, Mr. Lamia is unable to rent this property due to this improper denial of the occupancy permit. The fair market value of rent in 2021 in Allegheny County for a 4 Bedroom was $1,321.00 per month. https://www.rentdata.org/pittsburgh-pa-hud-metro-fmr-area/2021 (accessed March 29, 2022). The fair market value this year, 2022, is $1,595.00. https://www.rentdata.org/pittsburgh-pa-hud-metro-fmr-area/2022 (accessed March 29, 2022). Mr. Lamia has continued to pay the mortgage and bills at this property and has additional subject losses in an amount in excess of $12,000.00, insomuch as, he is unable to rent or sell the property due to the improper denial of the occupancy permit.

As such, the occupancy permit was improperly denied under an alleged violation of #321 and, therefore, the Field Corrective Notice must be dismissed with prejudice.

Respectfully submitted:

LJK LAW, PLLC:

Louis J. Kroeck, IV, Esquire
1200 Sarah Street
Pittsburgh, PA 15203
Phone: 1 (412) 712-7606
Email: Lou@ljk-law.com
Attorney for Michael Lamia

Dated: April 13, 2022



**PLUM BORO**
OneGreatBigsmallBoro

Agent Authorization Form
www.plumboro.com

Name of Property Owner(s) Michael Lamia

Description of Property or Project
108 McJunkin Road, Pittsburgh, PA 15239/ Lot & Block 851-L-25

Property Tax Map Number

The above named property owner hereby appoints Louis J. Kroeck IV, Esquire

LJK LAW, PLLC, 1200 Sarah Street, Pittsburgh, PA 15203, Phone 1 (412) 712-8706
Email: Lou@ljk-law.com
as its agent and authorizes said agent to apply for and process the above-mentioned development
plan/variance on her/his behalf. Agent is further authorized to sign all necessary documentation
for such purposes, including acceptance of conditions imposed by the Borough Council upon
approval of the plan. This authorization shall remain in force and effect until written notice of
revocation is delivered to the Plum Borough Manager.

SIGNED AND SEALED, intending to be legally bound on this date of 4-11-22

_____ (SEAL)
Signature of Owner(s)

 **Plum Borough Zoning Hearing Board 2022**

| Meeting Dates | Application Deadlines |
|---|---|
| January 19, 2022 | December 21, 2021 |
| February 16, 2022 | January 18, 2022 |
| March 16, 2022 | February 15, 2022 |
| April 20, 2022 | March 22, 2022 |
| May 18, 2022 | April 19, 2022 |
| June 15, 2022 | May 17, 2022 |
| July 20, 2022 | June 21, 2022 |
| August 17, 2022 | July 19, 2022 |
| September 21, 2022 | August 23, 2022 |
| October 19, 2022 | September 20, 2022 |
| November 16, 2022 | October 18, 2022 |
| December 21, 2022 | November 22, 2022 |

All applications are due by **5:00 P.M.** on the above stated deadlines to be placed on the agenda for the meeting desired.

Required Documentation – All must be submitted prior to application deadline or request will not be placed on the Zoning Hearing Board Agenda.

- Completed Application Form

- $250.00 Residential Application Fee – Made Payable to "The Borough of Plum"

- $500.00 Non-Residential Application Fee – Made Payable to "The Borough of Plum" for the first request and $100.00 for each request over one.

- Eight (8) copies of property survey or site plan showing all current and proposed structures.

- Eight (8) copies of proposed construction plans

**All applicants, or a representative of the applicant, must be present at the Zoning Hearing Board meeting to present their request.**

All meetings start at **7:00 P.M.** in the Council Chambers of the Plum Borough Municipal Building unless otherwise notified.



THE ZONING HEARING BOARD OF PLUM BOROUGH
ALLEGHENY COUNTY, PENNSYLVANIA

IN RE: Application for Variance by
    Michael Lamia                        ZHB-2022-03

FINDINGS OF FACT,
CONCLUSIONS OF LAW
& DECISION

Filed on Behalf of:

The Zoning Hearing Board of Plum
Borough

4575 New Texas Road
Pittsburgh, PA 15239

THE ZONING HEARING BOARD OF PLUM BOROUGH
ALLEGHENY COUNTY, PENNSYLVANIA

IN RE: Application for Variance by
Michael Lamia                                    ZHB-2022-03

<u>FINDINGS OF FACT, CONCLUSIONS OF LAW & DECISION</u>

Findings of Fact:

     1.    Michael Lamia (Appellant) owns Block & Lot # 851-L-00025 as identified in the Allegheny County Department of Real Estate.

     2.    The address of the property is 103 M<sup>c</sup>Junkin Rd., Plum, PA 15239.

     3.    The property is in the Borough of Plum.

     4.    On March 23, 2022, Kevin Fields, Inspector for the Borough of Plum, denied an occupancy permit for the property under Plum Borough Ordinance #321, as amended.

     5.    Plum Borough Ordinance No. 321 is titled:

          "AN ORDINANCE OF THE BOROUGH OF PLUM, REGULATING GRADING, EXCAVATIONS, FILLS AND ESTABLISHING STANDARDS THEREFORE AND REQUIRING GUARANTEES; PROVIDING FOR INSPECTION; CERTIFICATES OF OCCUPANCY; CONFERRING CERTAIN POWERS ON THE ADMINISTRATOR AND IMPOSING FINES AND PENALTIES".

     6.    Under Article 9 – DENIAL OF PERMIT – APPEAL SECTION 2 of Ordinance No. 321: "The Council for the Borough of Plum shall promptly consider appeals from the provisions of this Ordinance or from the determinations of the Administrator . . ."

     7.    Under Article 9, only Council for the Borough of Plum has jurisdiction to consider appeals from determinations made under Ordinance No. 321.

     8.    The Zoning Hearing Board hears and decides appeals where it is alleged that the Zoning Officer has failed to follow prescribed procedures or has misinterpreted or misapplied any provision of a Plum Borough Zoning Ordinance No. 916-17, as amended (Ordinance).

     9.    Ordinance No. 321 is not a zoning ordinance.

     10.    Kevin Fields is not a Zoning Officer.

1

11.    This appeal is denied because the Zoning Hearing Board lacks the jurisdiction to

consider the appeal.

_____                    5/26/22
Michelle Chapkis, Chairperson                Date

Borough of Plum
Received
APR 13 2022



**Application to the Zoning Hearing Board**

File No. ZHB-2022-03

| Name of Applicant: Michael Lamia | | |
|---|---|---|
| Address:   103 McJunkin Road | | |
| City:  Pittsburgh | State:  PA | Zip: 15239 |
| Phone No.:  1 (412) 853-8888 | E-mail address: michaellamiacontractingllc@gmail.com | |
| Location of Property Involved: 103 McJunkin Road, Pittsburgh, PA 15239 | | |
| | Lot & Block:  851-L-25 | |

| Provision(s) of Zoning Ordinance appealed: | |
|---|---|
| **Ordinance** | **Section No.** |
| Failure to Obtain Grading Permit | #321 |
| | |
| | |
| | |
| | |
| | |

**Type of Appeal:**

☑ A.  Appeal from any order, requirement decision, or determination made by the Zoning Officer

☐ B.  Variance from the provisions of the Zoning Ordinance

☐ C.  To authorize use by special exception

☐ D.  Challenge validity of the Zoning Ordinance

☑ E.  Other  Appeal from Improper Denial of Occupancy Permit by Plum Inspector.

A previous appeal   ☐ has   ☑ has not   been made.

Applicant must provide and attach a narrative to this application including information on grounds for appeal and reasons both with respect to law and fact for granting the appeal, variance, or special exception.  If hardship is claimed, state the specific hardship.

☑ Check here that narrative has been attached.



**VERIFICATION**

Michae. A. Lamia, hereby verify that the statements set forth in the foregoing Petition/Complaint are true and correct to the best of my knowledge, information and belief. I understand that false statements made herein are subject to the penalties of 18 Pa.C.S.A. Section 4904, relating to unsworn falsifications to authorities.

Dated: 6-19-22

Michael A. Lamia

## CERTIFICATE OF COMPLIANCE

I certify that this filing complies with the provisions of the *Case Records Public Access Policy of the Unified Judicial System of Pennsylvania* that require filing confidential information and documents differently than non-confidential information and documents.

Submitted by: Louis J. Kroeck, IV, Esquire

Signature: _____

Name: Louis J. Kroeck, IV, Esquire _____

Attorney No. (if applicable): _210045_____

# Supreme Court of Pennsylvania
## Court of Common Pleas
## Civil Cover Sheet

_Allegheny_ County

| For Prothonotary Use Only: |
| --- |
| Docket No: |

_The information collected on this form is used solely for court administration purposes. This form does not supplement or replace the filing and service of pleadings or other papers as required by law or rules of court._

**SECTION A**

**Commencement of Action:**
- [x] Complaint
- [ ] Writ of Summons
- [ ] Petition
- [ ] Transfer from Another Jurisdiction
- [ ] Declaration of Taking

Lead Plaintiff's Name: _Lenic_

Lead Defendant's Name: _Plum_

Are money damages requested? [x] Yes [ ] No

Dollar Amount Requested: (check one)
- [ ] within arbitration limits
- [x] outside arbitration limits

Is this a _Class Action Suit?_ [ ] Yes [x] No

Is this an _MDJ Appeal?_ [ ] Yes [x] No

Name of Plaintiff/Appellant's Attorney: _Lous J. Krick III - LJK Law, PLLC_

- [ ] Check here if you have no attorney (are a Self-Represented [Pro Se] Litigant)

**Nature of the Case:** Place an "X" to the left of the **ONE** case category that most accurately describes your **PRIMARY CASE.** If you are making more than one type of claim, check the one that you consider most important.

**SECTION B**

**TORT** (do not include Mass Tort)
- [ ] Intentional
- [ ] Malicious Prosecution
- [ ] Motor Vehicle
- [ ] Nuisance
- [ ] Premises Liability
- [ ] Product Liability (does not include mass tort)
- [ ] Slander/Libel/ Defamation
- [ ] Other:

**MASS TORT**
- [ ] Asbestos
- [ ] Tobacco
- [ ] Toxic Tort - DES
- [ ] Toxic Tort - Implant
- [ ] Toxic Waste
- [ ] Other:

**PROFESSIONAL LIABLITY**
- [ ] Dental
- [ ] Legal
- [ ] Medical
- [ ] Other Professional:

**CONTRACT** (do not include Judgments)
- [ ] Buyer Plaintiff
- [ ] Debt Collection: Credit Card
- [ ] Debt Collection: Other
- [ ] Employment Dispute: Discrimination
- [ ] Employment Dispute: Other
- [ ] Other:

**REAL PROPERTY**
- [ ] Ejectment
- [ ] Eminent Domain/Condemnation
- [ ] Ground Rent
- [ ] Landlord/Tenant Dispute
- [ ] Mortgage Foreclosure: Residential
- [ ] Mortgage Foreclosure: Commercial
- [ ] Partition
- [ ] Quiet Title
- [ ] Other:

**CIVIL APPEALS**
Administrative Agencies
- [ ] Board of Assessment
- [ ] Board of Elections
- [ ] Dept. of Transportation
- [ ] Statutory Appeal: Other
- [ ] Zoning Board
- [ ] Other:

**MISCELLANEOUS**
- [ ] Common Law/Statutory Arbitration
- [ ] Declaratory Judgment
- [x] Mandamus
- [ ] Non-Domestic Relations Restraining Order
- [ ] Quo Warranto
- [ ] Replevin
- [ ] Other:

_Updated 1/1/2011_