IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHAEL A. LAMIA,<br><br>    Plaintiff,<br><br>  v.<br><br>THE BOROUGH OF PLUM, ZONING HEARING BOARD OF PLUM BORO, KEVIN FIELDS, HEATHER ORAVITZ, DAVID A. SOBOSLAY,<br><br>    Defendants. | 2:22-CV-01035-RJC |

## **OPINION AND ORDER**

Before the Court is Plaintiff Michael A. Lamia's Motion for Preliminary Injunction Pursuant to Fed. R. Civ. P. 65, ECF No. 18, which Defendants The Borough of Plum, Zoning Hearing Board of Plum Boro, Kevin Fields, Heather Oravitz, and David A. Soboslay oppose, ECF No. 25. For the following reasons, the Court will DENY Mr. Lamia's Motion.

**I.   Procedural Background**

This case has been proceeding for some time before the Honorable Robert C. Colville. On May 19, 2023, Mr. Lamia filed a Motion for Temporary Restraining Order and Preliminary Injunction Pursuant to Fed. R. Civ. P. 65. ECF No. 18. On May 22, 2023, the Motion was referred to the undersigned for resolution. The same day, the Court issued an order denying that Motion to the extent that Mr. Lamia requested ex parte injunctive relief under Federal Rule of Civil Procedure 65(b) and converted the Motion to a request for a preliminary injunction. ECF No. 20.

On May 23, 2023, the Court held a status conference at which the parties presented argument on the Motion. ECF No. 21. The parties also made written submissions. ECF Nos. 19, 23, 25. On May 25, 2023, the Court held an evidentiary hearing. ECF No. 26. Plaintiff Michael

Lamia testified in support of his Motion. In opposition, Defendants called David A. Soboslay, the Assistant Manager for the Borough of Plum, and Harold "Bud" McCutcheon, Chief Engineer of KU Resources, to testify. Based upon their demeanor and testimony in response to questions, the Court finds that each witness testified credibly.

**II.     Background**

Mr. Lamia is the property owner of 103 McJunkin Road in Plum Borough (hereinafter, "the property"). ECF No. 18 ¶ 1. He testified that he has owned the property since 1998. He seeks a preliminary injunction ordering Defendants to issue an occupancy permit for the property so that he can execute a pending sale agreement of the property for $260,000, which is set to expire on May 28, 2023.

As background, on February 22, 2017, following an inspection of Mr. Lamia's property, Defendants informed him by letter that the property was in violation of the Plum Borough Grading Ordinance due to on-site "activities of dumping and filling." ECF No. 18-11 at 1. According to Defendants, the property's most significant issue was an accumulation of concrete debris located on the hillside. Pl.'s Ex. 1–3; Defs.' Ex. C. The February 22, 2017 letter outlined steps Mr. Lamia would need to take to bring the property into compliance. *Id.* However, those steps were never taken, and the concrete debris on the property remained untouched. Defs. Ex. F.

On July 21, 2021, despite this outstanding violation, Mr. Lamia applied for an occupancy permit from Defendants in order to sell the property as a residence. ECF No. 1-2 ¶ 26; ECF No. 18-1 ¶ 3. During this time, Mr. Lamia found a prospective buyer, who offered $207,000, conditioned on the issuance of an occupancy permit. ECF No. 18-1 ¶ 1. On March 23, 2022, Defendants denied his application for an occupancy permit due to the outstanding violations at the property, including, among other reasons, "illegal dumping of [c]onstruction materials, concrete,

and large amount of fill material on said property." ECF No. 18-12 at 1; *see also* Defs.' Ex. F (engineer's report listing twelve issues with the property); Defs.' Ex. E. Notably, Defendants' Chief Engineer found that the concrete debris created "a danger to future occupants and visitors to the property." Defs.' Ex. F. Because the property did not have an occupancy permit, the prospective buyer backed out of the deal, causing Mr. Lamia to lose the sale. ECF No. 18-1 ¶ 2.

Mr. Lamia appealed Defendants' denial of his occupancy permit to the Zoning Hearing Board. *See generally* ECF No. 18-10. On May 18, 2022, the Zoning Hearing Board held a hearing, in which it ultimately concluded that it did not have jurisdiction to hear the appeal because the Council for the Borough of Plum, not the Zoning Hearing Board, was the proper entity to which Mr. Lamia would need to have directed his appeal. ECF No. 18-10 ¶¶ 7–11.

On April 23, 2023, Mr. Lamia entered into a sale agreement with a second prospective buyer in the amount of $260,000, which is again conditioned on the property having an occupancy permit. ECF No. 18-1 ¶¶ 7, 9–10. The sale agreement will expire on May 28, 2023, unless an occupancy permit is issued, causing Mr. Lamia to lose this sale. *Id.* ¶ 12. In addition, the prospective buyers are currently accruing costs from staying in a hotel, until this sale goes through. *Id.* ¶ 9.

At the evidentiary hearing before this Court, Mr. Lamia testified that he had owned the property since 1998; however, he has never taken steps to address the concrete debris on the hillside of the property, despite the danger it poses. *See also* ECF No. 1-2 ¶ 24.

## III. Legal Standard

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. NRDC, Inc.*, 555 U.S. 7, 24 (2008); *see also Greater Phila. Chamber of Com. v. City of Phila.*, 949 F.3d 116, 133 (3d Cir. 2020) (courts should grant preliminary injunctions only in "limited

circumstances"); *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 800 (3d Cir. 1989). Four factors inform a court's decision as to the issuance of a preliminary injunction:

> (1) the likelihood that the plaintiff will prevail on the merits at final hearing; (2) the extent to which the plaintiff is being irreparably harmed by the conduct complained of; (3) the extent to which the defendant will suffer irreparable harm if the preliminary injunction is issued; and (4) that the public interest weighs in favor of granting the injunction.
>
> Generally, the moving party must establish the first two factors and only if these "gateway factors" are established does the district court consider the remaining two factors. The court then determines in its sound discretion if all four factors, taken together, balance in favor of granting the requested preliminary relief.

*Greater Phila. Chamber of Com.*, 949 F.3d at 133 (cleaned up); *see also Reilly v. City of Harrisburg*, 858 F.3d 173, 176 (3d Cir. 2017); *Ace Am. Ins. Co. v. Wachovia Ins. Agency Inc.*, 306 F. App'x. 727, 732 (3d Cir. 2009). Notably, "when the preliminary injunction is directed not merely at preserving the status quo but, as in this case, at providing mandatory relief, the burden on the moving party is particularly heavy." *Punett v. Carter*, 621 F.2d 578, 582 (3d Cir. 1980) (citing *United States v. Spectro Foods Corp.*, 544 F.2d 1175, 1181 (3d Cir. 1976)).

To establish a likelihood of success on the merits, the movant must "demonstrate that it can win on the merits (which requires a showing significantly better than negligible but not necessarily more likely than not)." *Reilly*, 858 F.3d at 179. That is, "the moving party must produce sufficient evidence to satisfy the essential elements of the underlying cause of action." *Sutton v. Cerullo*, No. 3:CV-10-1899, 2014 WL 3900235, at * 5 (M.D. Pa. Aug. 8, 2014) (citing *Punnett v. Carter*, 621 F.2d 578, 582–83 (3d Cir. 1980)). A preliminary injunction hearing is unnecessary where "the movant is proceeding on a legal theory which cannot be sustained" or has failed to present "a colorable factual basis to support the claim on the merits." *Bradley v. Pittsburgh Bd. of Educ.*, 910 F.2d 1172, 1176 (3d Cir. 1990).

4

**IV.     Discussion**

For the reasons set forth below, the Court finds that Mr. Lamia is not entitled to the extraordinary remedy of a preliminary injunction, particularly where he is requesting a change to the status quo in the form of an order directing Defendants to issue an occupancy permit to him, because he cannot show a likelihood of success on the merits or irreparable harm.

**A.     Mr. Lamia Has Not Shown a Likelihood of Success on the Merits**

Although his Complaint includes a number of state and federal claims,[1] Mr. Lamia argues that, for purposes of his request for a preliminary injunction, he is most likely to succeed on his claim that Defendants violated the Pennsylvania Municipal Code and Ordinance Act, 68 P.S. § 1081, *et seq.*, by failing to issue an occupancy permit. He has not fleshed out a likelihood of success argument for his other claims.

As relevant here, the Pennsylvania Municipal Code and Ordinance Act provides:

> (a) General rule. – A municipality requiring a use and occupancy certificate shall issue the certificate in the following manner:
>
> > (1) If the municipal inspection reveals no violations.
> >
> > (2) If the municipal inspection reveals at least one violation, but no substantial violations, the municipality shall issue a temporary use and occupancy certificate.
> >
> > (3) If the municipal inspection reveals at least one substantial violation, the municipality shall specifically note those items on the inspection report and shall issue a temporary access certificate.

---

[1] Mr. Lamia's Complaint includes a request for a writ of mandamus (Count I), alleges violations of the Pennsylvania Municipal Code and Ordinance Compliance Act (Count II), alleges federal constitutional violations under the First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments and Article I and V (Count III), and alleges a claim of abuse of process (Count IV).

68 P.S. § 1082.1. Mr. Lamia argues that his property has no "substantial violations," such that Defendants were required by law to issue an occupancy permit for the property. The statute defines a "substantial violation" as follows:

> A violation of an adopted building, housing, property maintenance or fire code or maintenance, health or safety nuisance ordinance that makes a building, structure or any part thereof unfit for human habitation and is discovered during the course of a municipal inspection of a property and disclosed to the record owner or prospective purchaser of the property through issuance of a municipal report.

*Id.* § 1082.

The Court concludes that Mr. Lamia has not shown that he has a likelihood of success on the merits because the record indicates that Defendants found a substantial violation on the property. Defendants relied on a comprehensive report from Harold McCutcheon, the Chief Engineer for the firm which serves Plum Borough. Mr. McCutcheon also testified at the evidentiary hearing before this Court. Mr. McCutcheon's report found there were "a number of issues and concerns regarding the work and current condition of the property," including (1) the concrete fill pit, (2) the accompanying soil and aggregates in the fill pit, (3) the construction and demolition debris, (4) the structural integrity of the land, (5) the risk that wood deterioration could result in further instability of the land, (6) the lack of keyway construction for the fill pit, (7) the fact that the fill pit was not created in a controlled manner, (8) the sloping elevation of the fill pit, such that it "creates a danger to future occupants and visitors to the property," (9) the failure to comply with grading ordinances, (10) the lack of proper erosion control elements, (11) the fill pit's encroachment on neighboring properties, and (12) the presence of commercial activity on a residential property. Defs.' Ex. F at 1–3. The report, which was disclosed to Mr. Lamia, provided remedial steps Mr. Lamia must take to resolve these issues, but as Mr. Lamia testified, he has not taken these steps to date. At the evidentiary hearing before this Court, Mr. McCutcheon relayed

that, consistent with the findings in his report, the hillside on Mr. Lamia's property created a dangerous condition due to the risk that the hillside might slide, or that occupants of or visitors to the property might be injured due to the large, uneven concrete pieces covering the hillside. *See id.* at 2.

Mr. Lamia argues that, under the statute, Defendants cannot deny an occupancy permit based on a substantial violation involving a non-building portion of a property, such as a hillside. However, the text states, "A violation . . . that makes a building, structure, or *any part thereof* unfit for human habitation" qualifies as a substantial violation. 68 P.S. § 1082 (emphasis added). Therefore, the statute is not limited to only structural dwellings but, rather, contemplates violations on any part of the property.

Based on the foregoing, the record indicates that Defendants did find a substantial violation on the property, such that the denial of the occupancy permit was appropriate. Accordingly, the Court finds that Mr. Lamia has not shown a likelihood of success on the merits.

### B.     Mr. Lamia Has Not Shown That He Will Suffer Irreparable Harm

Mr. Lamia claims that he will suffer irreparable harm if he is not issued an occupancy permit before May 28, 2023. "[T]o show irreparable harm a plaintiff must 'demonstrate potential harm which cannot be redressed by a legal or an equitable remedy following a trial.'" *Acierno v. New Castle Cnty.*, 40 F.3d 645, 653 (3d Cir. 1994). Notably, "[e]conomic loss does not constitute irreparable harm" because it can ultimately be recovered "at a later date, in the ordinary course of litigation." *Id.* (quoting *Sampson v. Murray*, 415 U.S. 61, 90 (1974)).

The potential harm that Mr. Lamia faces, however, is purely economic, such that it is not considered irreparable. In fact, the Third Circuit has reversed a district court that found a party "would suffer irreparable harm if he were not immediately granted a building permit." *Acierno*,

40 F.3d at 653, 655–66.  In doing so, the Third Circuit held that this type of harm "can be remedied by an award of money damages."  *Id.*  Here, Mr. Lamia argues that denying his request for a preliminary injunction will result in the loss of a $260,000 sale, as well as cause him to incur additional mortgage, utility, and upkeep payments.[2]  ECF No. 18-1 ¶ 3.  These are all economic losses, which can be compensated by money damages.  Accordingly, the Court finds that Mr. Lamia has not met his burden to show that he will suffer irreparable harm in the absence of a preliminary injunction.

As a final note, because Mr. Lamia has not met either, let alone both, of the "gateway factors," the Court need not consider the remaining factors for a preliminary injunction.  *See Greater Phila. Chamber of Com.*, 949 F.3d at 133.

**V.  Conclusion**

For the foregoing reasons, Mr. Lamia's Motion for Temporary Restraining Order and Preliminary Injunction Pursuant to Fed. R. Civ. P. 65, ECF No. 18, is hereby DENIED.

DATED this 26th day of May, 2023.

BY THE COURT:

/s/ Christy Criswell Wiegand
CHRISTY CRISWELL WIEGAND
United States District Judge

cc (via ECF email notification):

All Counsel of Record

---

[2] To the extent that he argues about the irreparable harm to the prospective buyers, that is not relevant because they are not parties to this litigation and the relevant consideration is potential irreparable harm to Mr. Lamia, the movant.