**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| MICHAEL A. LAMIA, | ) |
| | ) No. 2:22-cv-01035-RJC |
| Plaintiff, | ) |
| | ) |
| v. | ) Judge Robert J. Colville |
| | ) |
| THE BOROUGH OF PLUM, t/d/b/a Borough | ) |
| of Plum, Plum Boro, Plum Borough; | ) |
| ZONING HEARING BOARD OF PLUM | ) |
| BORO; KEVIN FIELDS, Zoning Officer | ) |
| and/or Designated Representative of Plum | ) |
| Boro; DAVID SOBOSLAY, Assistant | ) |
| Manager of Plum, in their Individual and/or | ) |
| Official Capacities, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION**

Robert J. Colville, United States District Judge

Before the Court is the Motion for Summary Judgment (ECF No. 70) filed by Defendants,

the Borough of Plum, Zoning Hearing Board of Plum Boro, Kevin Fields, and David Sobsolay,

and the Motion for Summary Judgment (ECF No. 74) filed by Plaintiff, Michael Lamia. The Court

has jurisdiction in this matter pursuant to 28 U.S.C. § 1331, and has supplemental jurisdiction over

any state-law claims pursuant to 28 U.S.C. § 1367. The Motions have been fully briefed and are

ripe for disposition.

### I.    Factual Background & Procedural History

By way of procedural background, Plaintiff filed his Complaint in the Court of Common

Pleas of Allegheny County on June 24, 2022, at Civil Division GD22-007991. The action was

removed to this Court on July 18, 2022. Notice of Removal, ECF No. 1. Plaintiff's Complaint

includes a request for a writ of mandamus (Count I), alleges a violation of the Pennsylvania

1

Municipal Code and Ordinance Compliance Act (Count II), alleges federal constitutional violations under the First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments and Article I and V (Count III), and alleges a claim of abuse of process (Count IV). *See* Compl., ECF No. 1, Ex. 2.

On July 26, 2022, Plaintiff filed a Motion to Remand (ECF No. 7) which this Court denied on March 13, 2023 (ECF Nos. 14, 15).  On August 15, 2022, Defendants filed a partial Motion to Dismiss Count I (ECF No. 10) which this Court granted on September 11, 2023 (ECF Nos. 30, 31), dismissing Count I with prejudice.  Lastly, on May 19, 2023, Plaintiff filed a Motion for Temporary Restraining Order and Preliminary Injunction (ECF No. 18) which was denied by this Court on May 26, 2023 (ECF No. 29).[1]

Defendants filed their Motion for Summary Judgment (ECF No. 70), along with a Brief in Support (ECF No. 71), a Concise Statement of Material Facts (ECF No. 72), and an Appendix of Exhibits (ECF No. 73), on February 14, 2025.  On March 13, 2025, Plaintiff filed a Response in Opposition.  ECF No. 77.  On March 26, 2025, Defendants filed a Reply.  ECF No. 79.

Plaintiff also filed his Motion for Partial Summary Judgment (ECF No. 74), along with a Brief in Support (ECF No, 75), and a Concise Statement of Material Facts (ECF No. 76) on February 14, 2025.  On March 14, 2025, Defendants filed their Response in Opposition.  ECF No. 78.  On March 28, 2025, Plaintiff filed his Reply.  ECF No. 80.

Unless otherwise noted, the following facts are not in dispute:

Plaintiff owned property at 103 McJunkin Road, Pittsburgh, Pennsylvania 15239 ("the Property").  ECF No. 72 ¶ 1; ECF No. 76 ¶ 2.  Plaintiff testified that, in approximately 2016, he applied for a permit to build a garage on his property.  TRO Hearing Tr., 7:8-12, May 25, 2023,

---

[1] The Motion for Temporary Restraining Order and Preliminary Injunction was referred to the Honorable Christy Criswell Wiegand.

ECF No. 37.[2]  Plaintiff further testified that the Borough's employee informed him that he could not build a garage because he already had a carport and that "code enforcement" was sent to his house.  *Id.* at 7:22-8:5.  Following, the Borough of Plum's inspection of the Property, it sent a letter to Plaintiff, dated February 22, 2017, detailing that the Property violated Ordinance #321.  ECF No. 72 ¶ 4; ECF No. 73, at 33; ECF No. 76, ¶ 1; ECF No. 76-1.  Specifically, the letter directed Plaintiff to "cease and desist all activities of dumping and filling at [the P]roperty immediately and secure a Grading Permit from the Borough of Plum, along with the required NPDES permit and approved Erosion & Sedimentation Control Plan from the Allegheny County Conservation District" and informed Plaintiff that if the "Grading Permit is not obtained all fill must be removed."  ECF No. 73, at 33; ECF No. 76-1.  On April 11, 2017, the Borough of Plum sent a second notice as to said violation and, on May 11, 2017, it sent a third and final notice as to said violation.  ECF No. 73, at 32, 34.  Plaintiff testified that he was sent these letters due to dirt piles present on his property which he subsequently removed in 2017.  TRO Hearing Tr., 8:5-15.  Defendant Soboslay testified that the violation detailed in the letters concerned grading on the hillside of the Property.  *Id.* 48:5-12.  Plaintiff testified that the condition of the hillside had been present on his property since he purchased it in 1998.  TRO Hearing Tr. 6:15, 13:16-23.

In June of 2021, Plaintiff began the process of attempting to sell the Property.  ECF No. 73, at 106-134; ECF No. 76-2.  As part of this process, a "Residential Occupancy Application" was submitted for the Property to the Borough of Plum which was received in July of 2021.  ECF No. 73, at 28.  On August 6, 2021, the Borough of Plum issued a Field Correction Notice detailing various violations found at the Property, including the lack of carbon monoxide alarms and smoke

---

[2] Both parties filed the TRO Hearing transcript as part of their Motions for Summary Judgment.  *See* ECF No. 73 at 449-556; *see also* ECF No. 76-11.

detectors and the need to install a new dryer vent, outlets, drywall, etc.  ECF No. 73, at 16-22.  Plaintiff testified that, sometime following the submission of the application for an occupancy permit, he had conversations with Defendants about their denial of the occupancy permit due to illegal dumping on the property.  TRO Hearing Tr., 8:21-9:15.

On September 18, 2021, a grading permit application was submitted for the Property.  ECF No 73 at 5-6.  This application was reviewed by KU Resources, Inc., the Borough's engineer, who stated that the application and provided plan did not provide enough information and was not in compliance with Grading Ordinance #321.  ECF No. 73 at 23; TRO Hearing Tr. 74:18.  On December 3, 2021, Soboslay sent an email to Plaintiff addressing Defendants' denial of the occupancy permit due to existing violations on the Property as well as Defendants' denial of the grading permit application.  ECF No. 73 at 3.  This email further stated that, to resolve the issue, Plaintiff needed to have an engineer submit an application for a grading permit so that Defendants could issue a grading permit and approve of the required grading work.  *Id.*  On December 8, 2021, Plaintiff was notified that the bank would not close on the sale of his house without an occupancy permit.  ECF No. 76-6.

On March 23, 2022, Defendants issued a Field Correction Notice to Plaintiff notifying Plaintiff that the occupancy permit would not be issued "due to an outstanding violation issued on February 22, 2017 for illegal dumping of [c]onstruction materials, concrete, and large amount of fill material on said property."  ECF No. 76-9.  This Notice further provided that Plaintiff needed to obtain a grading permit under Ordinance #321 or remove the fill from the property.  *Id.*  On April 13, 2022, Defendants received Plaintiff's Application to the Zoning Hearing Board to appeal the denial of the occupancy permit.  ECF No. 73 at 35.  On May 10, 2022, KU Resources inspected the Property and found fill on the Property consisting of construction materials including bricks,

concrete, gravel, plastic pipes, and pallets.  ECF No. 73 at 24.  KU Resources further expressed concern that some of the materials may not comply with the Pennsylvania Department of Environmental Protection's Management of Fill Policy or the Pennsylvania Solid Waste Management Act.  *Id.*  Further, the report detailed concerns that the area may be structurally weak and unstable and that the fill had created a steep edge covered in rough-edged elements.  *Id.* at 24-25.  The engineer testified about his report and detailed that there were additional concerns that movement could trigger a landslide.  TRO Hearing Tr. 82:6-20.

On May 18, 2022, the hearing was held before the Zoning Hearing Board and on May 26, 2022, the Zoning Hearing Board issued its findings of fact and conclusions of law finding that it only heard appeals as to zoning ordinances and that, because Plaintiff's occupancy permit was denied because of violations of Ordinance #321, it was not the proper body to hear the appeal.  ECF No. 73 at 40-105; ECF No. 76-3.  Plaintiff initiated the instant action in June of 2022.

In April of 2023, Plaintiff attempted a second sale of the Property.  On May 17, 2023, Defendants notified Plaintiff that they were denying his April 25, 2023 application for an occupancy permit due to an existing violation at the property.  ECF No. 73 at 446; ECF No. 76-10.  On May 19, 2023, Plaintiff filed a Motion for Temporary Restraining Order and Preliminary Injunction.  On May 23, 2023, Plaintiff's engineer authored a report stating that it had inspected the property three times on August 17, 2021, October 12, 2021, and May 18, 2023, and observed no changes to the hillside opining that it was stable and in compliance with HUD and IRC codes.  ECF No. 76-8.  The Court held a hearing on the Motion for Temporary Restraining Order on May 25, 2023.  ECF No. 37; ECF No. 73 at 449-556; ECF No. 76-11.

Plaintiff then corrected the violations on the Property and received an occupancy permit on June 4, 2024.  ECF No. 73 at 609; ECF No. 76, ¶ 10; ECF No. 72, ¶ 15.  He then sold the Property on July 11, 2024.  ECF No, 72, ¶ 16; ECF No. 73 at 611-16.

## II.      Legal Standard

Summary judgment may be granted where the moving party shows that there is no genuine dispute about any material fact, and that judgment as a matter of law is warranted.  Fed. R. Civ. P. 56(a).  Pursuant to Federal Rule of Civil Procedure 56, the court must enter summary judgment against a party who fails to make a showing sufficient to establish an element essential to his or her case, and on which he or she will bear the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In evaluating the evidence, the court must interpret the facts in the light most favorable to the nonmoving party, drawing all reasonable inferences in his or her favor.  *Watson v. Abington Twp.*, 478 F.3d 144, 147 (3d Cir. 2007).

"The moving party bears the initial burden of identifying evidence which demonstrates the absence of a genuine issue of material fact."  *Bavone v. Primal Vantage Co., Inc.*, No. 2:21cv1260, 2024 WL 756815, at *1 (W.D. Pa. Feb. 21, 2024).  When the moving party carries their burden, the summary judgment "opponent must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Further:

> A non-moving party may not successfully oppose a summary judgment motion by resting upon mere allegations or denials contained in the pleadings, or by simply reiterating those allegations or denials in an affidavit.  *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990).  Rather, the non-moving party must offer specific evidence found in the record that contradicts the evidence presented by the movant and indicates that there remain relevant factual disputes that must be resolved at trial.  *See id.*  If the non-moving party does not respond in this manner, the court, when appropriate, shall grant summary judgment.  Fed.R.Civ.P. 56(e).

*Mahaven v. Pulaski Twp.*, 139 F. Supp. 2d 663, 664–65 (W.D. Pa. 2001), *aff'd*, 45 F. App'x 155 (3d Cir. 2002); *see also Bavone*, 2024 WL 756815, at *1 ("Likewise, mere conjecture or speculation by the party resisting summary judgment will not provide a basis upon which to deny the motion.").

In ruling on a motion for summary judgment, the court's function is not to weigh the evidence, make credibility determinations, or determine the truth of the matter; rather, its function is to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party. *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150–51 (2000) (citing decisions); *Anderson v. Liberty Lobby*, 477 U.S. 242, 248–49 (1986); *Simpson v. Kay Jewelers, Div. of Sterling, Inc.*, 142 F.3d 639, 643 n. 3 (3d Cir. 1998).

The mere existence of a factual dispute, however, will not necessarily defeat a motion for summary judgment. Only a dispute over a material fact—that is, a fact that would affect the outcome of the suit under the governing substantive law—will preclude the entry of summary judgment. *Liberty Lobby*, 477 U.S. at 248.

III.   **Discussion**

A. **Defendants Motion for Summary Judgment**

Defendants asserts that they are entitled to summary judgment on all of Plaintiff's remaining claims because: (1) there is no actual controversy that currently exists; (2) Plaintiff failed to exhaust the administrative remedies available to him; and (3) there is no dispute of material fact that Plaintiff had numerous violations on the Property and refused to comply with the relevant Ordinances. ECF No. 70 at 2. Plaintiff opposes the Motion. The Court will address each argument in turn.

7

### 1. Mootness

First, Defendants assert that summary judgment should be entered in their favor because the action is moot as there is no longer an actual controversy between the parties.[3]  Specifically, Defendants argue that Plaintiff's claims are now moot because he was ultimately issued an occupancy permit and sold his property for more than he was offered during the two prior attempts. ECF No. 71 at 5.  Plaintiff argues that his claims are not moot because he suffered damages as a result of Defendants' conduct in delaying the issuance of an occupancy permit.  ECF No. 78 at 7-8.  In support of said argument, Plaintiff has submitted an Affidavit asserting that he made improvements to his property prior to the 2024 sale including landscaping, a new kitchen, new tiling, and painting in the approximate amount of $3,000 and that he added a second parcel of land to his property worth approximately $35,000.  ECF No. 78-1.  Defendants argue that Plaintiff's Affidavit attempts to impermissibly expand the record beyond information exchanged during discovery.  ECF No. 79 at 2-3.

Mootness is directly related to Article III standing because mootness, like standing, is a doctrine that limits a court's jurisdiction "to cases in which a plaintiff has a concrete stake." *Freedom from Religion Foundation Inc. v. New Kensington Arnold School District*, 832 F.3d 469, 475-76 (3d Cir. 2016).  Specifically, "[s]tanding ensures that each plaintiff has 'the requisite personal interest . . . at the commencement of the litigation,' while mootness ensures that this interest 'continue[s].'" *Id.* at 476 (quoting *Arizonans for Official English v, Arizona*, 520 U.S. 43, 68 n.22 (1997)).  As further explained by the Third Circuit,

---

[3] If a claim is moot, then the Court lacks subject matter jurisdiction over said claim.  Therefore, while Defendants have raised the argument in a motion for summary judgment, it is really an argument that the Court lacks jurisdiction brought pursuant to Fed. R. Civ. P. 12(b)(1).  *See Sheely v. MRI Radiology Network, P.A.*, 505 F.3d 1173, 1182 (11 Cir. 2007) (finding that a court of appeals should review a district court's disposition of a case on mootness grounds as one for lack of subject matter jurisdiction under Rule 12(b)(1) even if the district court labeled its ruling as one for summary judgment).

Mootness "ensures that the litigant's interest in the outcome continues to exist throughout the life of the lawsuit." *Cook v. Colgate Univ.*, 992 F.2d 17, 19 (2d Cir. 1993). The party asserting that a claim is moot must show that it is "absolutely clear that the allegedly wrongful behavior [is] not reasonably [ ] expected to recur." [*Friends of the Earth, Inc. v. Laidlaw Envtl. Sers. (TOC), Inc.*, 528 U.S. 167, 189 (2000)]. "[A] court will not dismiss a case as moot," even if the nature of the injury changes during the lawsuit, if "secondary or 'collateral' injuries survive after resolution of the primary injury." *Chong v. Dist. Dir., I.N.S.*, 264 F.3d 378, 384 (3d Cir. 2001); *Cantrell v. City of Long Beach*, 241 F.3d 674, 678 (9th Cir. 2001) ("[T]he question is not whether the precise relief sought at the time the application for an injunction was filed is still available. The question is whether there can be any effective relief.").

*Id.* The burden of establishing mootness is on the party seeking to demonstrate the loss of standing. *Lutter v. JNESO*, 86 F.4th 111, 120 (3d Cir. 2023).

Here, in the Complaint, Plaintiff requested the following relief: that the Court enjoin Defendants from violating local laws, violating Plaintiff's constitutional rights, and from asserting code violations with respect to the Property; that the Court order Defendants to issue an occupancy permit; that the Court award nominal, incidental, actual, compensatory, special, or other damages; and that the Court award Plaintiff interest, costs, and reasonable attorney's fees. As such, to the extent Plaintiff requests injunctive relief or that the Court require Defendants to issue an occupancy permit, such relief is moot. However, Plaintiff's claims for damages and attorney's fees are not moot and the Court will allow Plaintiff's claims to proceed so long as the claims for damages and attorney's fees remain. *See Church v. City of St. Michael*, 205 F. Supp. 3d 1014, 1030 (D. Minn. 2016) (finding that when the city amended the zoning ordinance at issue, the plaintiff's claims for injunctive relief were moot but that the plaintiff's claims for damages and attorney's fees still presented a live controversy).

The Court acknowledges Defendants' arguments as to the untimely submission of Plaintiff's Affidavit and as to the damages asserted in the Affidavit itself. However, the Court is

without sufficient information to resolve this issue. First, the Affidavit asserts damages related to improvements made to the Property and the addition of a parcel of land. Without making any official ruling, the Court questions whether Plaintiff would be entitled to damages for general improvements he made to the Property that were unrelated to the alleged violations at issue in this case. Even so, the Affidavit does assert that Plaintiff made improvements to landscaping, which may be related to the alleged violations at issue in this case. The Affidavit does not, however, clearly assert the amount of money Plaintiff spent to correct the alleged violations nor does it assert any estimation as to the amount of attorney's fees or as to any other damages allegedly sought by Plaintiff.

Further, while Defendants argue that the claims made in Plaintiff's Affidavit are not supported by evidence in the record, were not disclosed during discovery, and that Plaintiff ultimately sold the Property for more money, the Court has no information as to whether discovery was exchanged concerning Plaintiff's other alleged damages. Neither party has presented substantive argument as to whether Plaintiff is required to submit proof of damages to survive summary judgment under the claims at issue or as to whether Plaintiff is entitled to the damages he seeks under the claims at issue. As such, questions of fact remain surrounding Plaintiff's damages in this case. Because questions of fact remain as to damages, Plaintiff's request for relief as to damages remains active and, therefore, Plaintiff's claims are not moot. As such, Defendants' Motion for Summary Judgment based on the argument that Plaintiff's claims are moot is denied.

### 2. Exhaustion

Next, Defendants move for summary judgment based on Plaintiff failing to exhaust his administrative remedies. Specifically, Defendants assert that Plaintiff failed to appeal his claims to the Plum Borough Council and has offered no evidence or facts as to why he did not appeal.

ECF No. 71 at 6.  Plaintiff argues that he made repeated and good faith attempts to exhaust his claims but that Defendants "ignored, obstructed, or arbitrarily dismissed those efforts."  ECF No. 78 at 8.

Here, the Court again is without sufficient information or argument to resolve the exhaustion question.  To begin, Defendants have not presented any substantive argument in support of their statement that Plaintiff failed to exhaust his claims.  Defendants have not cited the Court to the relevant ordinance at issue or to any case law directly relevant to the Court's consideration of the issue.  This alone is reason to deny Defendants' Motion.  Further, in reviewing the transcript of the Zoning Hearing Board, numerous arguments were made during said hearing that, in the Court's view, directly relate to the issue of exhaustion and as to what ordinance should apply.  *See* ECF No. 73, at 40-105; *see also* ECF No. 76-3.  The arguments raised during the hearing imply to the Court that the issue of exhaustion is much more complex than what either party has presented in their briefing.  It is not the Court's function to create argument for the parties and the Court declines to rule on the issue of exhaustion in light of the current record.

Therefore, Defendants' Motion for Summary Judgment on the issue of administrative exhaustion is denied.  Defendants may renew their failure to exhaust argument, should it be appropriate, by submitting additional evidence and argument, to which Plaintiff may respond with additional evidence and argument of his own.  *See Hannah v. Administrator Albert C. Wagner Youth Correctional Facility*, 2020 WL 1864575, at *4 (D. N.J. April 14, 2020) (denying summary judgment as to the issue of administrative exhaustion due to lack of information but allowing the defendant to renew his argument).  Any further motion should clearly set forth the basis for summary judgment with citations to the relevant ordinances, evidence in the record, and case law.

B. **Cross Motions for Partial Summary Judgment**

Turning to Count II, both parties have moved for summary judgment on this count and the Court will, therefore, address the parties' arguments together. That said, the standards to be applied in deciding cross motions for summary judgment are the same as those applied when only one party has moved for summary judgment. The Court may only grant summary judgment if the moving party is entitled to summary judgment as a matter of law and there are no genuine disputes of material facts.

Before addressing the arguments of the parties, the Court acknowledges, generally, that while Defendants stated that they were moving for summary judgment as to Count II, they did not brief the issue until their Reply. *See* ECF No. 70 at 2 (asserting that Count II should be dismissed because there is no dispute of material fact as to Count II). While normally the Court would caution against ruling on an issue not fully argued until a Reply, the arguments raised by Defendants were similarly raised in Defendants' Response to Plaintiff's Motion for Summary Judgment and, as such, Plaintiff had the opportunity to respond to these arguments.

Turning to the substance of the parties' arguments, Plaintiff has moved for summary judgment as to Count II arguing that there are no disputes of material fact that Defendants violated Pennsylvania's Municipal Code and Ordinance Compliance Act ("MCOCA") when they denied an occupancy permit to Plaintiff. Defendants oppose the Motion.[4] Defendants have moved for summary judgment arguing that there is no dispute of material fact that Plaintiff had "substantial

---

[4] In opposing the Motion, Defendants argue that Plaintiff has attempted to impermissibly expand the record before the Court. ECF No. 77 at 3. Specifically, Defendants argue that Plaintiff has submitted as part of his appendix an exhibit that Judge Weigand declined to admit during the TRO hearing. *Id.* Defendants have not specifically identified the document at issue in their briefing on the Motion for Summary Judgment, but, having reviewed the TRO hearing transcript, the Court notes that the document at issue is likely an engineering report. *See* TRO Hearing Tr., 25:22-27:24. To begin, when ruling on a motion for summary judgment the Court is not bound to the record that existed before it when it ruled on a motion for temporary restraining order. At the time the Court conducted the TRO hearing, discovery had not been completed. Further, Defendants have not argued that the engineering report was not disclosed during discovery. As such, any arguments made related to the inclusion of the engineering report are denied

violations" on the Property and that Defendants denied Plaintiff's request for an occupancy permit

based on those violations.  ECF No. 70 at 2; ECF No, 79 at 4.  Plaintiff opposes the Motion.

The Honorable Christy Criswell Wiegand set forth the applicable standard under the

MCOCA when ruling on Plaintiff's Motion for Temporary Restraining Order and Preliminary

Injunction.  The Court incorporates that standard below:

[T]he Pennsylvania Municipal Code and Ordinance Act provides:

(a)  General rule. – A municipality requiring a use and occupancy
certificate shall issue the certificate in the following manner:

(1)  If the municipal inspection reveals no violations.

(2)  If the municipal inspection reveals at least one violation, but
no substantial violations, the municipality shall issue a
temporary use and occupancy certificate.

(3)  If the municipal inspection reveals at least one substantial
violation, the municipality shall specifically note those items
on the inspection report and shall issue a temporary access
certificate.

68 P.S. § 1082.1. . . . The statute defines a "substantial violation" as follows:

A violation of an adopted building, housing, property maintenance
or fire code or maintenance, health or safety nuisance ordinance that
makes a building, structure or any part thereof unfit for human
habitation and is discovered during the course of a municipal
inspection of a property and disclosed to the record owner or
prospective purchaser of the property through issuance of a
municipal report.

*Id. § 1082.*

May 26, 2023 Memorandum Opinion, ECF No. 29 at 5-6.  The statute further defines "unfit for

human habitation" as follows:

A condition which renders a building or structure, or any part thereof, dangerous or
injurious to the health, safety or physical welfare of an occupant or the occupants
of neighboring dwellings. The condition may include substantial violations of a

property that show evidence of: a significant increase to the hazards of fire or accident; inadequate sanitary facilities; vermin infestation; or a condition of disrepair, dilapidation or structural defects such that the cost of rehabilitation and repair would exceed one-half of the agreed-upon purchase price of the property.

*Id.*

Here, Plaintiff first argues that, under the MCOCA, there was no "substantial violation" because substantial violations only concern the structure of the property. ECF No. 75 at 5. Defendants argue that this Court has already determined that a substantial violation can exist to the property and not just structures located on the property. ECF No. 77 at 4-5. This argument is one that was already addressed by Judge Weigand when ruling on Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction. The Court acknowledges that a different standard applies when considering a Motion for Temporary Restraining Order versus a Motion for Summary Judgment. The Court also acknowledges that it may not rely on previous credibility and factual findings made on a Motion for Temporary Restraining Order when ruling on a Motion for Summary Judgment because the Court must, at this stage, determine whether any genuine issues of material fact are left to be resolved and must not weigh the evidence or make credibility determinations.

That said, this argument is simply a legal one. Whether the MCOCA allows for the denial of an occupancy permit based on a violation located on the property but not the structure itself. The Court agrees with Judge Weigand that "the text [of the MCOCA] states, "[a] violation . . . that makes a building, structure, *or any part thereof* unfit for human habitation" qualifies as a substantial violation and, therefore, "the statute is not limited to only structural dwellings but, rather, contemplates violations on any part of the property." May 26, 2023 Memorandum Opinion, p. 7. Further, when looking to the entire MCOCA, the statute states that "the purchaser of a property known to be in violation or substantial violation of a municipal code or ordinance shall,

at his option, either: (1) bring *the property* into compliance . . . or (2) demolish the building or structure."  68 P.S. § 1083(a) (emphasis added).  The use of the term "property" throughout the statute further suggests that a violation can be to the entire property and not just a building or structure.  As such, a substantial violation found on any part of the property can result in the denial of an occupancy permit under the MCOCA.

Next, Plaintiff argues that because Defendants relied on Ordinance #321 as the basis for denying the occupancy permit, and because Ordinance #321 does not relate to occupancy of a structure or dwelling and instead only relates to the grading of property, Defendants' decision to deny the occupancy permit was arbitrary.  *Id.* at 6.  Specifically, Plaintiff argues that because Ordinance #321 deals only with grading, excavation, and fills, Defendants' denial of the occupancy permit based on Ordinance #321 is misplaced.  ECF No. 75 at 6.  Further, Plaintiff argues that the term "occupancy permit" does not appear in Ordinance #321 and that Defendants' application for an occupancy permit does not make reference to fill or grading.  *Id.*  Defendants argue that no material fact exists that they found a substantial violation based on the grading issues on the Property.  ECF No. 77 at 4.  This argument is also purely legal in nature.

In reviewing the MCOCA in its entirety, it is clear that a substantial violation, while defined in the statute itself, is found when a property owner has violated a municipal code or ordinance.  Specifically, the statute defines "substantial violation" as "[a] violation of a . . . *code* or . . . *ordinance* that makes a building, structure or any part thereof unfit for human habitation . . ."  68 P.S. § 1082 (emphasis added).  Further, when detailing the requirements for complying with the MCOCA, the statute details that "the purchaser of a property known to be in *violation or substantial violation of a municipal code or ordinance* shall, at his option, either: (1) bring the property into compliance *with municipal codes or ordinances* or (2) demolish the building or

structure." *Id.* § 1083(a) (emphasis added).  Therefore, the statute in its entirety makes it clear that a municipality may deny an occupancy permit where there are violations of a municipal code or ordinance on the property that create a substantial violation.  As such, Defendants could rely on a violation of Ordinance #321 when finding whether a substantial violation existed on the Property even if Ordinance #321 does not directly deal with the issuance of occupancy permits.

Next, Plaintiff argues that no substantial violation existed on the property and, that even if one did, Defendants still did not comply with the MCOCA.  Defendants argue that no material fact exists that they found a substantial violation based on the grading issues on the Property.  ECF No. 77 at 4.  To begin, Plaintiff has not argued or presented evidence that the issues identified on the Property did not exist at the time Defendants denied the occupancy permit.  Further, the numerous letters sent to Plaintiff by Defendants detail that Defendants identified a violation on the Property and would not be issuing an occupancy permit.  As such, there is no question of fact that the identified condition existed on Plaintiff's property and that Plaintiff was notified that such a condition was a violation which resulted in the denial of the occupancy permit.

Therefore, the Court must determine whether the violation that existed was a "substantial violation."  While not addressed directly by either party, the Court notes that two interpretations of the MCOCA are possible here.  The first, is that the determination of whether a "substantial violation" exists is solely in the municipality's purview and, therefore, the only question is whether Defendants did in fact find a substantial violation under the MCOCA.  The second, is that it is up to this Court to determine whether Defendants' finding of a substantial violation is supported by a review of the evidence before the Court.  The Court need not determine which interpretation is correct because the Court comes to the same conclusion under either interpretation.

16

Under the first interpretation, there is no question of fact that Defendants found a substantial violation of the Property under the MCOCA.  On May 17, 2023, Defendants sent a letter to Plaintiff stating that they had received the application of an occupancy permit but that Defendants could not issue the occupancy permit due to an existing violation at the Property.  ECF No. 73 at 446; ECF No. 76-10.  Then, on May 23, 2022, Defendants issued a field corrective notice for the Property noting that an occupancy permit would not be issued due to an outstanding violation "for illegal dumping of [c]onstruction materials, concrete, and large amount of fill material on [the P]roperty."  ECF No. 76-9.  The Court acknowledges that the letters sent to Plaintiff to do not use the term "substantial violation" or "unfit for human habitation."  However, in reviewing the record as a whole, and in viewing the evidence in the light most favorable to Plaintiff, the Court finds that Defendants found a substantial violation on the Property that resulted in them denying the occupancy permit.

The Court now turns to the second possible interpretation, that the Court must review the evidence and determine whether a "substantial violation" exists on the Property.  The Court previously set forth the definition of a substantial violation above which requires that there be a violation that makes the property "unfit for human habitation."  Relevant to the Court's analysis here, "unfit for human habitation" is a condition that makes the property dangerous to the health, safety, or physical welfare of an occupant or neighbors which includes evidence of an increase in the risk of an accident.  Here, the pictures submitted detail significant concrete and debris along the hillside of the Property.  The 2022 engineering report submitted by Defendants' engineer details that the presence of bricks, concrete, gravel, plastic pipe, pallets, and other elements create a steep slope covered in rough-edged elements.  ECF No. 73 at 24-27.   It further details concerns about the future stability of the hillside.  *Id.*  The engineering report submitted by Plaintiff, details

17

that three inspections were completed of the Property over the course of one year and 9 months and that no changes to the hillside were observed and the engineer opined that the hillside was stable.  ECF No. 76-8.

While the two engineering reports provide conflicting opinions as to the stability of the hillside, the Court notes that Defendants' engineer is concerned about future stability while Plaintiff's engineer speaks more to the immediate stability of the hillside, Plaintiff has not offered any evidence to counter Defendants' engineer's opinion that there are numerous construction materials on the property creating a steep hillside covered in rough-edged materials.  Such an opinion is further supported by a review of the submitted photographs.  ECF No. 73 at 423-445; ECF No. 76-12.  As such, Defendants have submitted ample evidence that the presence of the construction materials on the Property, especially given their location on a steep hillside, creates a condition that is dangerous to the safety of the occupant and neighbors which includes evidence of an increase in accidents.  In reviewing the evidence in the light most favorable to Plaintiff, the Court finds that Defendants are entitled to summary judgment that a substantial violation existed on the Property.

Lastly, Plaintiff argues that, even if a substantial violation did exist on the Property, Defendants violated the MCOCA by not issuing a temporary access certificate.  The MCOCA states that if a substantial violation is found, "the municipality shall specifically note those items on the inspection report and shall issue a temporary access certificate."  68 P.S. § 1082.1(a)(3).  A "temporary access certificate" is defined as:

> A certificate issued by a municipality as a result of the municipal inspection of a property incident to the resale of the property that identifies at least one substantial violation, and the purpose of the certificate is to authorize the purchaser to access the property for the purpose of correcting substantial violations pursuant to the maintenance and repair provisions of this act.  No new occupant who has not previously occupied a property may occupy a property during the term of a

18

temporary access certificate, but tenants, in the case of a tenant-occupied property, already occupying the property may remain in the property at the discretion of code enforcement based on human habitability.  The owner shall be permitted to store personalty that is related to the proposed use or occupancy of the property or is needed to repair the substantial violations during the time of the temporary access certificate.

*Id.* § 1082.

While Plaintiff moves for summary judgment arguing that Defendants violated the MCOCA by failing to issue a temporary access certificate, Plaintiff's Complaint makes no such claim.  In his Complaint, Plaintiff specifically asserts that Defendants violated the MCOCA by failing to issue an occupancy permit because the alleged violation did not rise to the level of being unfit for habitation and was only minor in nature.  *See* Compl. ¶¶ 78-80.  Further, in reviewing the Complaint as a whole, Plaintiff never alleges that Defendants failed to issue a temporary access certification.  Instead, Plaintiff alleges only that Defendants failed to issue a permanent or temporary occupancy permit.  *See* Compl. ¶¶ 33, 38.  As such, the Court will not consider Plaintiff's claim that Defendants violated the MCOCA by failing to issue a temporary access certificate.

Therefore, for the reasons discussed above, the Court will deny Plaintiff's Motion for Partial Summary Judgment and grant Defendants' Motion for Summary Judgment as to Count II.

## IV.      Conclusion

For the reasons discussed above, the Court will grant, in part, Defendants' Motion for Summary Judgment and will deny Plaintiff's Motion for Summary Judgment.  An appropriate Order of Court follows.

BY THE COURT:

*/s/Robert J. Colville*
Robert J. Colville
United States District Judge

DATED: March 31, 2026

cc: All counsel of record

20